**STATE ex rel. MISSOURI GROWTH ASSOCIATION, et al., Relators/Respondents,**

v.

**STATE TAX COMMISSION, et al., Respondents/Appellants.**

No. 81757.

Supreme Court of Missouri, En Banc.

Aug. 31, 1999.

As Modified on Denial of Rehearing Sept. 21, 1999.

---

Don M. Downing, Gretchen Garrison, Peter W. Salsich, III, St. Louis, for Appellants.

James C. Owen, Katherine S. Walsh, James P. Gamble, St. Louis, for Respondents.

STEPHEN N. LIMBAUGH, Jr., Judge.

This is a mandamus action in which relators, Missouri Growth Association, et al.,[1] seek to compel respondent, State Tax Commission (STC),[2] to file its "final Order of Rulemaking" amending 12 CRS 30–4.010, the regulation that governs the valuation of all agricultural and horticultural land for the assessment of property taxes. Following judgment in favor of relators, the STC appeals.[3] This Court has jurisdiction because the case involves a challenge to the validity of a part of section 137.021.1, RSMo Supp.1998, that provides for legislative oversight to the STC's rulemaking authority. Mo. Const. art. V, sec. 3. The judgment is reversed, and the case is remanded.

Under section 137.021.1, the STC, in "each odd-numbered year," is required to "promulgate by regulation and publish a value based on productive capability for each of the several grades of agricultural and horticultural land." The "productive capability" of those several grades is to be determined according to various criteria set forth in the statute, and the values established are to be used by all county assessors in determining assessed values. The statute also states that any value-setting regulation "shall be deemed to be beyond the scope and authority provided in this subsection if the general assembly, within the first sixty calendar days of the regular session following the promulgation of such regulation, by concurrent resolution, shall disapprove the values contained in such regulation." The statute then provides that if the general assembly disapproves a proposed regulation, the STC "shall continue to use the values set forth in the most recent preceding regulation. . . ." If, on the other hand, the general assembly does not disapprove the regulation, it "shall take effect on January first of the next odd-numbered year."

On October 15, 1997, in an effort to comply with the requirements of section 137.021.1, the STC filed a proposed rule with the secretary of state that would amend 12 CSR 30–4.010 for the 1999–2000 assessment cycle by setting new values based on "productive capability." Under

1. Missouri Growth Association is a not-for-profit corporation whose members are a number of commercial real estate development businesses and certain affiliated trade organizations. Relators also include St. Louis Apartment Association, which is another not-for-profit trade organization; Valcour Development Company, a real estate development business; and Senator John D. Schneider and six other individuals who are alleged to own real property in the St. Louis area.

2. The individual members of the STC, Van E. Donley, Bruce E. Davis and Douglas W. Burnett, were also named as parties-respondent.

3. With leave of Court, Missouri Farm Bureau has submitted a brief as amicus curiae.

the proposed rule, assessments on agricultural and horticultural land would be increased by an average of 13% from the 1993 values then in effect. After publication of the proposed rule and the STC's receipt of comments from the public as required under rulemaking procedures specified in section 536.021, RSMo Supp. 1998, the general assembly, pursuant to section 137.021.1, adopted House Concurrent Resolution No. 3 (HCR 3), which rejected the regulation, thus purporting to keep the values at the 1993 level.

Relators then filed a multi-count petition for writ of prohibition and declaratory judgment challenging a variety of STC actions and inactions. In Count I, relators claimed that the STC should be compelled to file the proposed rule as a final rulemaking order despite the general assembly's rejection of the rule, and that the legislative oversight process by which the general assembly rejected the rule was unconstitutional. After numerous delays, trial on Count I was held on April 22, 1999, and judgment was rendered in favor of relators on June 1, 1999. The trial court also determined that the judgment on Count I could properly be severed from the other counts and that there was no just reason to delay entry of a final judgment for purposes of appeal under Rule 74.01. Subsequently, the trial court denied the STC's motion to stay the judgment pending appeal. According to STC's motion to supplement the record, which was filed after oral argument before this Court and which motion this Court now sustains, the STC, faced with the possibility of a contempt citation, has filed a final rulemaking order with the secretary of state as ordered by the trial court. Nonetheless, the secretary of state, siding with the STC but not a party to this lawsuit, now refuses to publish the rule though publication is required under section 536.021 before the rule can be effective.

■ On appeal, the STC presents 16 points relied on ranging from several alleged jurisdictional defects to the alleged invalidity of the legislative oversight process in section 137.021.1. Because this Court holds that one of the points relied on– the propriety of the remedy of mandamus– is dispositive and requires reversal, the other points, including the constitutional question, need not be addressed. *See Rodriguez v. Suzuki Motor Co.*, 996 S.W.2d 47, 53–54 (Mo. banc 1999).

■ The law of mandamus is well settled. Mandamus is a discretionary writ, and there is no right to have the writ issued. *State ex rel. Johnson v. Griffin*, 945 S.W.2d 445, 446 (Mo. banc 1997) (citing *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 576 (Mo. banc 1994)). Mandamus will lie only when there is a clear, unequivocal, specific right to be enforced. *Id.* The purpose of the writ is to execute, not adjudicate. *Id.* Mandamus is only appropriate to require the performance of a ministerial act. *State ex rel. Bunker Resource v. Dierker*, 955 S.W.2d 931, 933 (Mo. banc 1997); *Missouri Coalition v. Joint Comm. on Admin.*, 948 S.W.2d 125, 131 (Mo. banc 1997). Conversely, mandamus "cannot be used to control the judgment or discretion of a public official ..." *State Bd. of Health Ctr. v. County Comm'n*, 896 S.W.2d 627, 631 (Mo. banc 1995).

The propriety of mandamus in this case is foreclosed by section 536.021.5, RSMo Supp.1998, the last of several statutory procedures necessary to perfect all agency rules or regulations. That section states:

5. Within ninety days after the expiration of the time for filing statements in support of or in opposition to the proposed rulemaking, or within ninety days after the hearing on such proposed rulemaking if a hearing is held thereon, the state agency proposing the rule shall file with the secretary of state a final order of rulemaking either adopting the proposed rule, with or without further changes, *or withdrawing the proposed rule*, which order of rulemaking shall be published in the Missouri Register.

Such ninety days shall be tolled for the time period any rule is held under abeyance pursuant to an executive order. If the state agency fails to file the order of rulemaking as indicated in this subsection, the proposed rule shall lapse and shall be null, void and unenforceable. (Emphasis added.)

Because the statute gives an agency the discretion to withdraw proposed rules or regulations within the stated time frame and affirmatively considers them withdrawn if not filed within that time frame, mandamus will not lie. Indeed, the agency's statutory discretion in the matter is the antithesis of the kind of ministerial act or duty to which mandamus is properly addressed.[4]

Even without the benefit of the withdrawal provisions of section 536.021.5, there is still no ministerial duty to promulgate the specific rule in question because conceivably there is a host of different rules that could accomplish section 137.021.1's mandate of establishing land values based on "productive capability." Selection of one such rule over another is within the STC's discretion, and there is simply no ministerial duty in play.

Relators' response is that the failure to file a final rulemaking order within the 90-day period was not the result of a discretionary decision by the STC, but was due solely to the adoption of HCR 3, which precluded the STC from finalizing its proposed rule. The legislature should not be allowed, as relators explain, to prevent STC's compliance with section 536.021 by an unconstitutional legislative oversight process. Even if HCR 3 were the immedi-

ate cause of the rule's demise, the STC still had the discretion to withdraw the rule or decline to file a final rulemaking order in the event that the legislature had not disapproved the rule. Regardless of the general assembly's role in the process, the STC never had a ministerial duty to perfect its proposed rule.

In conclusion, the trial court erred in ordering the STC to file its final order of rulemaking with the secretary of state because the STC cannot be compelled to adopt the specific rule in question. The STC's post-adjudication filing of the final order of rulemaking with the secretary of state, therefore, is of no effect. By this holding, however, this Court does not suggest that the STC is relieved of its statutory obligation to promulgate some other rule under section 137.021.1, but the STC cannot be said to have refused to fulfill that obligation, at least during the pendency of this litigation, and for that reason mandamus is still inappropriate. *See Twentieth Judicial Circuit v. Bd. of Com'rs*, 911 S.W.2d 626, 628 (Mo. banc 1995) (mandamus may be triggered only by the government agency's refusal to act). Finally, as stated, because of the disposition of this case on the mandamus issue, the other issues, including the constitutional validity of the legislative oversight process, section 137.021.1, need not be addressed.

For the foregoing reasons, the judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

4. As noted, part of section 137.021.1 states that "[i]f such [proposed] rules are not disapproved by the general assembly ... they shall take effect on January first of the next odd-numbered year." At first glance, that provision appears to conflict with the section 536.021.5 provisions for the agency to change or withdraw proposed rules and for the lapse of proposed rules where no final order of rulemaking is filed. This issue was not raised by the parties. Nonetheless, there is no indication in the overall statutory rulemaking

scheme that section 137.021.1 procedures were intended to counteract rather than complement section 536.021.5 procedures. It is this Court's duty to construe statutes relating to the same subject harmoniously. *Farmers' Elec. v. Mo. Dept. of Corrections*, 977 S.W.2d 266, 270 (Mo. banc 1998). That can be achieved by the recognition that the section 137.021.1 provision is designed simply to set the effective date of the rule, not to negate the withdrawal and lapse provisions of section 536.021.5.

PRICE, C.J., COVINGTON, WHITE and WOLFF, JJ., concur.

HOLSTEIN, J., concurs in separate opinion filed.

BENTON, J., concurs in opinion of HOLSTEIN, J.

HOLSTEIN, Judge, concurring.

I fully concur in the majority opinion. But even assuming some ministerial duty to issue regulations exists, mandamus is not available. Relators' brief includes what I believe is a significant misunderstanding of Missouri law that was apparently relied on by the trial court. This misapprehension has to do with relators' standing to seek mandamus.

Standing to bring mandamus has an exceedingly low threshold. But having standing in mandamus requires more than being a citizen interested in good government, as relators claim. It is fundamental to the concept of standing that the relators must have something personal at stake in the dispute, however slight, attenuated or remote it may be. *Raines v. Byrd*, 521 U.S. 811, 819, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) (holding that congressmen had no standing in mandamus to challenge a statute granting the president a line item veto on appropriations bills.). While several of our cases make note of how low the threshold is when a simple, purely ministerial function is involved, none of the cases relied on by relators holds that no threshold of interest is required. *See State ex rel. Twenty–Second Judicial Circuit v. Jones*, 823 S.W.2d 471, 475 (Mo. banc 1992) (holding that the presiding judge of the circuit court had sufficient standing to enforce through mandamus the ministerial responsibilities of public officials regarding the circuit court's budget); *State ex rel. Taylor v. Wade*, 360 Mo. 895, 231 S.W.2d 179, 181 (1950) (holding that the attorney general, due to both his statutory and common law duties, had sufficient standing to compel a county court to prepare and publish a mandated annual financial statement by means of mandamus); *Missouri Coalition for the Environment v. Joint Committee on Administrative Rules*, 948 S.W.2d 125, 132 (Mo. banc 1997) (holding that taxpayers had standing to challenge the actions of a legislative committee where funds were being expended for the unconstitutional operation of the committee).

As each of these cases indicates, standing in mandamus belongs to anyone within the wide orb of those persons that a legal mandate was designed to benefit or persons who hold some special office implicating a duty to enforce the legal mandate. A mere curious bystander has no standing to bring mandamus unless, of course, the legal mandate in question was intended to benefit curious bystanders. For example, a statute mandating public disclosure of a county's financial condition and imposing a criminal penalty for noncompliance was designed to benefit the entire public, an informed public being essential to democracy. In such case, a member of the public has sufficient standing to bring mandamus. *State ex rel. Taylor v. Wade, supra.* The statutory mandates on adopting reassessment regulations were not designed to inform the general public or for the benefit of nontaxpayers.

The statutory mandates on reassessment were designed to benefit taxpayers by ensuring a reasonably fair distribution of the property tax burdens among all classes of property owners. Neither before the trial court nor here do relators make a claim to standing as taxpayers. Perhaps this is because doing so would give rise to serious questions of whether mandamus lies for a taxpayer who has legal remedies available. *See State ex rel. J.C. Nichols Co. v. Boley*, 853 S.W.2d 923, 924 (Mo. banc 1993).

I conclude that the sole basis upon which relators claim standing, that of concerned citizens, is insufficient. Mandamus does not lie even if there were a true ministerial duty to enforce.