OPINION CONCURRING IN PART AND DISSENTING IN PART
Zel M. Fischer, Chief Justice
I concur with the opinions of Judges Draper, Wilson, and Powell to the extent they hold the administrative action is properly reviewed as a noncontested case,[1] and that discrimination based on sexual orientation is not covered by the Missouri Human Rights Act. Lampley v. Mo. Comm'n on Human Rights , Slip Op. at 13; see also R.M.A., by h is next friend: Rachelle Appleberry v. Blue Springs R-IV Sch. Dist. , 568 S.W.3d 420, 433-34, 2019 WL 925511 (Mo. banc 2019).[2] I also agree Lampley and Frost failed to comply with Rule 94 because they sought a summons rather than a preliminary order. U.S. Dep't of Veterans Affairs v. Boresi , 396 S.W.3d 356, 359 n.1 (Mo. banc 2013) ;
*33 Bartlett v. Mo. Dep't. Ins. , 528 S.W.3d 911, 914 (Mo. banc 2017).
Unlike a majority of this Court, my view is that clarity and predictability demand this Court follow its rules as written. State ex rel. Tivol Plaza, Inc. v. Mo. Comm'n on Human Rights, 527 S.W.3d 837, 847-48 (Mo. banc 2017) (Fischer, J., dissenting). The failure to follow Rule 94 is where the resolution of this case should begin and end. Boresi , 396 S.W.3d at 365 (Fischer, J., concurring); Bartlett , 528 S.W.3d at 914.[3] Rather than following Rule 94 as written, a majority of this Court is once again willing to excuse compliance with this Court's rules. Like the boy who cried wolf, the principal opinion reduces this Court's holdings to unheeded exhortations by once again excusing Lampley and Frost's noncompliance with Rule 94.
DISSENTING OPINION
W. Brent Powell, Judge
I respectfully dissent. The principal opinion overlooks crucial issues that control the outcome of this case and preclude this Court from deciding whether the Missouri Human Rights Act covers discrimination based on sex stereotyping. Harold Lampley and Rene Frost, who were aggrieved by an administrative agency decision, sought both contested case review and noncontested case review in the circuit court. To the extent they sought contested case review, the circuit court's summary judgment against them must be affirmed because the circuit court was without authority to conduct contested case review for a noncontested case. To the extent Lampley and Frost sought noncontested case review via a writ of mandamus in the circuit court, their appeal must be dismissed because the circuit court did not first issue a preliminary writ before denying mandamus relief. However, if this Court exercises its discretion to review the denial of mandamus relief in this appeal, the circuit court's decision should be affirmed because mandamus cannot be used to control the administrative agency's executive director's discretionary determination that Lampley's and Frost's complaints alleged discrimination based on sexual orientation rather than sex stereotyping. Moreover, even if such determination were subject to review by an "abuse of discretion" standard, the executive director did not abuse her discretion in closing Lampley's and Frost's complaints because the determination that the complaints alleged discrimination based on sexual orientation rather than sex stereotyping was not unreasonable, arbitrary, or clearly against the logic of the circumstances considering the allegations contained in the complaints.
I.
Lampley and Frost filed complaints with the Missouri Commission on Human Rights alleging discrimination by their supervisors. The Commission's executive director reviewed the complaints and determined the complaints alleged discrimination based on sexual orientation. Thereafter, the executive director closed the complaints prior to a hearing because the Missouri Human Rights Act (MHRA) does not cover discrimination based on sexual orientation. When Lampley and Frost sought review of the executive director's *34 decision, they each filed a petition in the circuit court denominated "Petition for Administrative Review or in the Alternative for Mandamus." The petitions stated they were seeking judicial review pursuant to § 536.140,[1] which applies to contested cases, or, alternatively, a writ of mandamus pursuant to § 536.150, which applies to noncontested cases. The circuit court ultimately granted summary judgment against Lampley and Frost. While the circuit court denied mandamus relief in its summary judgment ruling, it did so without first issuing a preliminary writ. Instead, the circuit court issued only summonses, and the case proceeded not as a mandamus action under Rule 94 and § 536.150 but as if the case were subject to contested case judicial review pursuant to § 536.140. Lampley and Frost appealed from the circuit court's ruling rather than seeking mandamus relief from the next higher court. Lampley and Frost's two points on appeal argue: (1) the executive director abused her discretion in determining their complaints alleged discrimination based on sexual orientation rather than sex stereotyping (Point II); and (2) the MHRA covers discrimination based on sex stereotyping (Point I). Their second point, therefore, is necessarily contingent on their first. Notably, Lampley and Frost do not address whether the MHRA covers discrimination based on sexual orientation, which the executive director determined their complaints alleged.
II.
Judicial review of the executive director's actions on behalf of the Missouri Commission on Human Rights is governed by statute. Section 213.085.2 of the MHRA allows any person "aggrieved by a final decision ... of the commission" to obtain judicial review by "filing a petition in the circuit court of the county of proper venue." The section goes on: "Judicial review shall be in the manner provided by chapter 536." Chapter 536, the Missouri Administrative Procedure Act (MAPA), provides for judicial review of administrative decisions for two different types of cases, contested and noncontested. Furlong Cos., Inc. v. City of Kan. City , 189 S.W.3d 157, 165 (Mo. banc 2006). "A 'contested case' is defined in the MAPA as 'a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing.' " Id. "Contested case review is controlled by sections 536.100 to 536.140." Id. "The MAPA does not explicitly define a 'non-contested case,' but it has been defined by this Court as a decision that is not required by law to be determined after a hearing." Id. Noncontested case review is controlled by § 536.150. Id. The distinction between a contested and noncontested case is not immaterial. The scope of judicial review is different depending on the type of case, and a circuit court is without authority to conduct contested case review for a noncontested case or vice versa. See Nowden v. Div. of Alcohol & Tobacco Control , 552 S.W.3d 114, 117 (Mo. banc 2018) ; McCoy v. Caldwell Cty. , 145 S.W.3d 427, 428-29 (Mo. banc 2004).
With this distinction in mind, it is important to note the Missouri Commission on Human Rights did not render a decision following a hearing in this case. Rather, the executive director of the Commission administratively closed the complaints, prior to a hearing, for lack of authority[2] *35 pursuant to 8 CSR 60-2.025(7)(B). This Court has held the closure of a complaint by the executive director of the Commission before a hearing is held "squarely fits within the provisions of section 536.150 as a decision in a noncontested case ." State ex rel. Martin-Erb v. Mo. Comm'n on Human Rights , 77 S.W.3d 600, 606 (Mo. banc 2002) (emphasis added); see also 8 CSR 60-2.025(7)(E) (providing judicial review of the executive director's decision "shall be in the manner provided by Chapter 536, RSMo for noncontested cases") (emphasis added). Lampley and Frost were each aggrieved by a decision in a noncontested case, rather than a contested case.[3]
Seeking review of the executive director's decision, Lampley and Frost each filed a petition in the circuit court denominated "Petition for Administrative Review or in the Alternative for Mandamus." The petitions stated they were seeking judicial review pursuant to § 536.140, which applies to contested cases, or, alternatively, a writ of mandamus pursuant to § 536.150, which applies to noncontested cases.[4] Because Lampley and Frost were each aggrieved by a decision in a noncontested case, the circuit court lacked authority to conduct contested case review pursuant to § 536.140. See Nowden , 552 S.W.3d at 118 ; McCoy , 145 S.W.3d at 428-29. Consequently, to the extent the petitions sought contested case review, summary judgment against Lampley and Frost was undoubtedly proper and should be affirmed.[5] See Nowden , 552 S.W.3d at 118 ; McCoy , 145 S.W.3d at 428-29.
But to the extent the petitions sought noncontested case review by means of a writ of mandamus, a separate procedural issue arises. While the circuit court denied mandamus relief in its grant of summary judgment against Lampley and Frost, it did so without first issuing a preliminary writ. Instead, the circuit court issued only summonses to initiate review. This is procedurally deficient as this Court set out in U.S. Department of Veterans Affairs v. Boresi , 396 S.W.3d 356 (Mo. banc 2013).
In Boresi , this Court explained the "practice of issuing a summons in lieu of a preliminary writ is not authorized by Rule 94. Writs are extraordinary remedies, and their procedures differ from normal civil actions. The practice of issuing a summons rather than a preliminary order fails to acknowledge the nature of the remedy." Id. at 359 n.1. Although this Court exercised *36 its discretion in Boresi to nevertheless treat a summons as a preliminary writ, it warned: "This Court is not required to exercise its discretion in like manner in the future." Id.
Four years later, this Court declared: "That future has now arrived." Bartlett v. Mo. Dep't of Ins. , 528 S.W.3d 911, 914 (Mo. banc 2017). In Bartlett , two former employees filed a petition for a writ of mandamus against their former employer, the Missouri Department of Insurance. Id. at 912. The circuit court did not issue a preliminary writ but instead issued summonses and eventually denied mandamus relief by granting summary judgment in favor of the department. Id. at 912-13. When the employees attempted to appeal the circuit court's denial of mandamus relief, this Court dismissed the appeal because "denial of mandamus relief without the issuance of a preliminary writ is not subject to appeal." Id. at 914. In doing so, this Court once again explained there is a difference between issuing a summons and issuing a preliminary writ, and that issuing a summons is not authorized by Rule 94, which governs mandamus. Id. This Court gave another warning, as well: "Parties seeking mandamus relief who choose to disregard the procedures and requirements of Rule 94 do so at their own risk." Id.
In their supplemental briefing, Lampley and Frost argue their appeal should not be dismissed, but instead argue this Court should review the closure of their complaints on the merits pursuant to State ex rel. Tivol Plaza, Inc. v. Missouri Commission on Human Rights , 527 S.W.3d 837, 842 (Mo. banc 2017). In Tivol , handed down the same day as Bartlett , this Court exercised its discretion to treat summonses as preliminary writs, in contrast with Bartlett . While this Court exercised its discretion to treat summonses as preliminary writs, the Court once again warned future litigants they "should not expect unending tolerance" for failing to follow Rule 94. Id. This Court excused such failure in Tivol , citing "the lack of fault on the part of the parties in proceeding by summons and in light of the importance of the issues presented in these cases." Id. Tivol stands for the proposition that this Court may exercise its discretion to entertain an appeal of the denial of mandamus despite the issuance of a summons rather than a preliminary writ of mandamus, but just because this Court may exercise its discretion does not mean it is required to do so, even if the parties lack fault by proceeding by summons and the issue seeking review is an issue of importance.
The failure to follow the procedures set forth in Rule 94 prejudices both the parties and the courts. Extraordinary writ procedures exist because writ actions differ from ordinary civil cases. As the concurring opinion noted in Boresi , "the issuance of a summons does not serve all the purposes of a preliminary order and is not authorized by Rule 94 (mandamus) or 97 (prohibition)." Boresi, 396 S.W.3d at 365 (Fischer, CJ., concurring). For the respondent, the "purpose of requiring a preliminary order at the outset of a writ proceeding is to require some judicial evaluation of the claim to determine if the respondent should even be required to answer the allegations." Id. For the relator, "a preliminary order in mandamus or prohibition does more than a summons, which satisfies notice to a person that an action has been filed so that the person may appear and defend against the action, because the preliminary order often prohibits further action until further order of the court." Id. On appeal, the failure to follow the proper writ procedures "leads to confusion as to the proper standard of review." Id.
In the instant case, Lampley and Frost had notice of the dire warning in Boresi *37 but nevertheless ignored the requirements of Rule 94 and failed to request the circuit court issue a preliminary writ. More importantly, they also failed to satisfy even the most basic requirements of Rule 94, such as specifically explaining why they were entitled to an extraordinary writ or filing suggestions in support of a writ petition. See Rule 94.03. Indeed, it is generous to even credit Lampley's and Frost's petitions with substantively seeking mandamus relief. While the petitions were certainly denominated as ones seeking mandamus in the alternative and the prayers for relief requested mandamus in the alternative, the analysis in the petitions expressly cited to, and was tailored toward, the criteria for contested case review, not mandamus. The petitions contained no separate mandamus-specific analysis. See Weber v. Weber , 908 S.W.2d 356, 359 (Mo. banc 1995) ; McClellan v. Highland Sales & Inv. Co. , 426 S.W.2d 74, 77 (Mo. 1967) (finding "the character of a cause of action is determined from the facts stated in the petition and not by the prayer or name given the action"). Furthermore, after filing their petitions, Lampley and Frost ceased to rely on § 536.150 and mandamus altogether. Instead, in their further pleadings-whether in opposition to the respondents' motion to dismiss, in opposition to the respondents' motion for summary judgment, in support of their own motion for summary judgment, or in their proposed findings of fact and conclusions of law-Lampley and Frost relied exclusively on § 536.140, which is irrelevant to mandamus.[6]
In their supplemental briefing, Lampley and Frost offer no excuse for their lack of compliance with the writ procedure rules but merely ask this Court to exercise its discretion to review this matter on the merits as this Court did in Tivol . Were this Court never to enforce its procedural rules, no litigant or judge would ever follow them. See R.M.A v. Blue Springs R-IV Sch. Dist. , 477 S.W.3d 185, 188-189 (Mo. App. 2015) (refusing to exercise discretion and dismissing an appeal of a denial of a permanent writ of mandamus decided on the merits after a trial court issued a summons rather than a preliminary writ in a MHRA case because "trial courts and parties are not free to disregard the plain language of Rule 94"). More importantly, this case can be distinguished from Tivol because this case does not present an issue of general importance. The initial question this Court must determine, before reaching the issue of whether the MHRA covers sex stereotyping, as the principal opinion and Judge Wilson's concurring opinion rush to decide, is whether the executive director abused her discretion in finding Lampley's and Frost's complaints alleged discrimination based on sexual orientation rather than discrimination based on sex stereotyping. As more fully explained below, because the executive director did not abuse her discretion, this Court cannot reach the issue of general importance whether the MHRA protects against sex stereotyping as the principal opinion contends. Therefore, this Court should not exercise its discretion, and Lampley's and Frost's appeal of the circuit court's denial of mandamus relief without issuance of a preliminary writ should be dismissed in accordance with Boresi , Tivol , and Bartlett .
III.
Even if this Court were to exercise its discretion and entertain the appeal in accordance with Tivol , the circuit court *38 should nonetheless be affirmed. "An appellate court reviews the denial of a petition for a writ of mandamus for an abuse of discretion."[7] Boresi , 396 S.W.3d at 359. Of course, to determine whether a circuit court abused its discretion in denying mandamus relief, it must be understood what would warrant relief in the circuit court.
Petitioners seeking noncontested case review pursuant to § 536.150 have several options, as they may file a "suit for injunction, certiorari, mandamus, prohibition or other appropriate action." Section 536.150.1 further provides a court may review whether an administrative decision in a noncontested case is "unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion." In their petitions, Lampley and Frost specifically chose to seek review by mandamus, but they did not specify review by one or more of the standards provided by § 536.150.1.
"Mandamus will lie only when there is a clear, unequivocal, specific right to be enforced." State ex rel. Mo. Growth Ass'n v. State Tax Comm'n , 998 S.W.2d 786, 788 (Mo. banc 1999). "The purpose of the writ is to execute, not adjudicate." Id. "Mandamus is only appropriate to require the performance of a ministerial act." Id. "The purpose of the extraordinary writ of mandamus is to compel the performance of a ministerial duty that one charged with the duty has refused to perform." Furlong , 189 S.W.3d at 165 ; see also State ex rel. Robison v. Lindley-Myers , 551 S.W.3d 468, 473 (Mo. banc 2018). Mandamus will not issue except "in cases where the ministerial duties sought to be coerced are simple and definite, arising under conditions admitted or proved and imposed by law." Martin-Erb , 77 S.W.3d at 608 n.7 ; see also Robison , 551 S.W.3d at 474 ; Furlong , 189 S.W.3d at 166. "Conversely, mandamus cannot be used to control the judgment or discretion of a public official" Mo. Growth Ass'n , 998 S.W.2d at 788 (internal quotations omitted). Accordingly, mandamus cannot be used to control discretionary decisions.[8] Martin-Erb , 77 S.W.3d at 607-08.
The executive director must close a complaint if she determines the Commission *39 lacks authority. See 8 CSR 60-2.025(7)(B) ; see also § 213.075.1; Farrow v. Saint Francis Med. Ctr. , 407 S.W.3d 579, 589 (Mo. banc 2013). As part of this determination, the executive director necessarily must exercise discretion to decide what a complaint actually alleges. See § 213.075.1. Here, the executive director determined the complaints alleged discrimination based on sexual orientation and concluded, as a matter of law, the MHRA does not cover discrimination based on sexual orientation.[9]
Notably, Lampley and Frost do not contest whether the MHRA covers discrimination based on sexual orientation.[10] Instead, on appeal, they argue they pleaded discrimination based on sex stereotyping rather than sexual orientation.[11] The challenged act in this case, therefore, is not the executive director's decision to close the complaints because the MHRA does not cover discrimination based on sexual orientation but rather the executive director's discretionary determination that the complaints pleaded discrimination based on sexual orientation rather than sex stereotyping.
Consistent with the general standard for mandamus, this Court has previously held that, in the context of noncontested case review pursuant to § 536.150, a discretionary determination by the executive director of the Commission is not subject to review by mandamus. See Martin-Erb , 77 S.W.3d at 607. In Martin-Erb , the executive director closed a complaint after determining there was "no probable cause" to believe discrimination occurred. Id. at 602. The complainant sought review of this decision by filing a petition for a writ of mandamus in the circuit court. Id. The circuit court issued a preliminary writ but then ultimately quashed it, reasoning the decision was not reviewable by mandamus. Id. at 602-03. On appeal, this Court explained "a court cannot compel the executive director to exercise her discretion so as to reach a particular result , [but] it can compel her to follow the procedures set out in agency regulations for making the 'probable cause' determination." Id. 607 (emphasis added). In other words, mandamus could be used to enforce mandatory procedures but not to control a *40 discretionary determination. Id. "In so holding, this Court emphasizes that the circuit court should not substitute its discretion for that of the executive director in determining whether 'probable cause' exists" Id. at 608 ; see also § 536.150.1 (in reviewing a decision in a noncontested case, "the court shall not substitute its discretion for discretion legally vested in such administrative officer or body").
Lampley and Frost do not suggest the executive director failed to follow mandatory procedures in reaching her determination that the complaints pleaded discrimination based on sexual orientation. Instead, they challenge her discretionary determination that Lampley's and Frost's complaints alleged discrimination based on sexual orientation rather than sex stereotyping. In fact, Lampley and Frost specifically allege in their substitute brief that the "Commission abused its discretion" by finding their complaints alleged discrimination based on sexual orientation rather than sex stereotyping. In accordance with Martin-Erb , the executive director's discretionary determination is not subject to review by mandamus, as "a court cannot compel the executive director to exercise her discretion so as to reach a particular result," and this Court cannot substitute its discretion for that of the executive director in determining that the complaints pleaded discrimination based on sexual orientation rather than sex stereotyping. Id. at 607-08. The circuit court's denial of mandamus, if appealable, may be affirmed on this basis alone.
Nevertheless, if, contrary to Martin-Erb , the general standard for mandamus were ignored and the executive director's discretionary determination were subject to review by one or more of the standards provided by § 536.150.1, the circuit court should still be affirmed. While § 536.150.1 provides a court may review whether a decision is "unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion," Lampley and Frost's substitute brief argues only the "abuse of discretion" standard regarding the executive director's determination of what their complaints alleged.[12] Because the executive director did not abuse her discretion in determining the complaints alleged discrimination based on sexual orientation, summary judgment should be affirmed.
Section 213.075.1 requires a complaint to "set forth the particulars " of the alleged discrimination. (Emphasis added.) Here, the complaints particularized, and focused on, the fact Lampley is a gay man.
*41 Lampley's complaint begins by stating "I am a male and gay" and Frost's complaint begins by stating she is friends with Lampley, "a male who is gay." The complaints then allege two supervisors created a hostile work environment that has affected the terms and conditions of employment. The complaints stated Lampley's two supervisors "have knowledge that I am gay," noting the point in time when each supervisor learned Lampley is gay, and the discrimination is alleged to have occurred after they learned Lampley is gay. Lampley's complaint also compared his treatment to "similarly situated co-workers [who] are not gay." All of these "particulars" of the complaints were irrelevant unless the complaints were alleging discrimination based on Lampley's sexual orientation.[13]
Although the complaints also made references to "stereotypical attributes," no particular attributes or behaviors that could be the subject of sex stereotyping were ever mentioned. There was no allegation that Lampley had any particular demeanor or appearance associated with a sex stereotype. Rather, the references to "stereotypical attributes" were always prefaced by the fact that Lampley is gay, suggesting this is how the two supervisors knew or suspected that he was gay.[14] In fact, being gay is the only particular "attribute" ever discussed in the complaints. Considering these "particulars" set forth in the complaints, see § 213.075.1, the executive director's determination that the complaints alleged discrimination based on sexual orientation rather than sexual stereotyping was not "clearly against the logic of the circumstances" or "so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration," In re Care and Treatment of Donald , 214 S.W.3d 331, 334 (Mo. banc 2007). "If reasonable persons can differ as to the propriety of the [decision maker's] action, then it cannot be said that the [decision maker] abused its discretion."[15] Id.
As the executive director did not abuse her discretion in determining the complaints *42 alleged discrimination based on sexual orientation, the circuit court certainly did not abuse its discretion in denying a petition for mandamus that attempted to challenge this discretionary determination. Accordingly, if the denial of mandamus is treated as appealable and not dismissed, the circuit court should be affirmed.[16]

Unless otherwise indicated, all statutory citations are to RSMo 2000.

In a request for supplemental briefing, this Court raised two issues: (1) whether Claimants adequately sought judicial review of this noncontested case pursuant to section 536.150, and (2) whether the procedural requirements of Rule 94 for petitions for writs of mandamus were followed and the ordinary standards for mandamus were applied. It seems clear that, at the time these petitions were filed, Claimants were unsure whether they were seeking judicial review of a contested case under section 536.100, RSMo Supp. 2013, or a noncontested case under section 536.150. Though it is clear, now, that this is a noncontested case, such confusion would have been understandable at that time. In any event, the Commission concedes in its supplemental brief that Claimants "tried to bring this action through a petition for a writ of mandamus under Section 536.150," and the circuit court plainly understood that this was so. Moreover, a petition for writ of mandamus is not the only means of seeking judicial review of a noncontested case. Section 536.150 plainly provides a party may seek such relief "by suit for injunction, certiorari, mandamus, prohibition or other appropriate action." No matter how the judicial review is sought, however, the standard governing whether the party seeking judicial review should be given relief is that set forth in section 536.150 (i.e., "whether such decision ... is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion"), not the standard governing petitions for writs of mandamus generally. Missourians have a constitutional right to seek review of administrative decisions, whether resulting from a contested case or a noncontested case. Mo. Const. art. V, § 18. As a result, it ill behooves this Court to frustrate that right by injecting procedural hurdles to such review that the parties have not raised and the circuit court did not reach.

In R.M.A., the plaintiff received a right to sue letter from the Commission and appealed after his MHRA claim was dismissed with prejudice by the circuit court. R.M.A. , 568 S.W.3d at 424-25. Here, Claimants contend the Commission's executive director erred by administratively closing proceedings on their charges before the Commission for lack of jurisdiction on the ground that the charges did not assert claims under the MHRA. In both cases, the only question before the Court is whether the facts alleged and reasonable inferences drawn from those facts - taken as true - are sufficient to state a claim under the MHRA. Because Claimants' charges allege facts sufficient to state claims under the MHRA for sex discrimination (and discrimination due to association with someone claiming sex discrimination), the Commission (and/or its executive director) were wrong to close those charges for lack of the Commission's jurisdiction.

As in R.M.A. , the Court need not - and, therefore, does not - decide whether the change from the "contributing factor" test to the "motivating factor" test brought about in 2017 by amendments to section 213.010(2) and (19), RSMo Supp. 2017, would apply to this case. The Court need not resolve that question because Lampley alleges he was discriminated against "because of" his sex. This allegation is more akin to "but for" causation and, even though such strict causation is not required under the MHRA, an allegation of "but for" causation is a sufficient allegation under either the "contributing factor" test or the "motivating factor" test. R.M.A. , 568 S.W.3d at 425 n.3.

Both the Commission's executive director and the circuit court erred because they persisted in characterizing Lampley's Amended Charge as claiming discrimination based on sexual orientation. The MHRA protects against, inter alia , discrimination in employment based on sex. § 213.055. Here, Lampley alleges Employer took adverse employment action against him "because of [his] sex." Amended Charge at ¶ 9. Lampley does not allege Employer took adverse employment action against him because of his sexual orientation. Although Lampley alleges he is gay and does not exhibit stereotypically male attributes, he properly alleges the discriminatory conduct was based on his male sex, and, therefore, whether or not Lampley is gay, or whether or not Lampley displayed stereotypically male attributes, is irrelevant for purposes of determining whether he alleged sufficient ultimate facts to state a claim under the MHRA for sex discrimination.

The principal and concurring opinions correctly acknowledge our review of this matter is governed by § 536.150, RSMo 2000, and Lampley and Frost concede in their supplemental briefing contested case review of the executive director's actions is unavailable.

Whether the MHRA should be amended to prohibit and provide a remedy for discrimination based on sexual orientation is a policy decision for the General Assembly, not this Court.

In Boresi , this Court explained the "practice of issuing a summons in lieu of a preliminary writ is not authorized by Rule 94" and warned "This Court is not required to exercise its discretion in like manner in the future." Boresi , 396 S.W.3d at 359 (Mo. banc 2013). In Bartlett , this Court stated "That future has now arrived" and dismissed the appeal because "denial of mandamus relief without the issuance of a preliminary writ is not subject to appeal." Bartlett , 528 S.W.3d at 914.

Because Lampley's and Frost's petitions could more aptly be characterized as seeking review pursuant to § 536.140, summary judgment could be affirmed because the circuit court lacked authority for the reasons set forth above to conduct contested case review pursuant to § 536.140. See Nowden , 552 S.W.3d at 118 ; McCoy , 145 S.W.3d at 428-29.

The fact the circuit court denied mandamus relief by granting summary judgment against Lampley and Frost does not convert the standard of review to the de novo review typically used for summary judgment as the principal opinion and Judge Wilson's opinion contend. This is because the standard of review when a writ is denied is derived from the discretionary nature of writs in general, not the means by which a particular denial occurs. "Because the disposition of the underlying writ request is discretionary, the matter is reviewed on appeal only to determine whether the circuit court abused its discretion in quashing the writ." State ex rel. Taylor v. Meiners , 309 S.W.3d 392, 394 (Mo. App. 2010) (internal quotations omitted).

Nothing in § 536.150 purports to change the substantive nature of mandamus; it merely provides mandamus is one of several options to obtain noncontested case review. Indeed, this Court has previously indicated the general standard for mandamus applies even when mandamus relief is sought specifically pursuant to § 536.150. See, e.g., Robison , 551 S.W.3d at 473 ; Tivol , 527 S.W.3d at 841 ; Furlong , 189 S.W.3d at 165 - 66 ; Martin-Erb , 77 S.W.3d at 607, 608 n.7. Because mandamus is used to enforce duties required by law rather than to control discretionary decisions, when a petitioner-given the several options provided by § 536.150.1-chooses to seek noncontested case review by filing a petition for a writ of mandamus, the judicial review contemplated by § 536.150.1 is essentially limited to determining whether the administrative decision was "unlawful," i.e., whether the administrative officer or body refused to perform a duty required by law. See Martin-Erb , 77 S.W.3d at 607-08. Notably, § 536.150.1 provides a court may consider six different review standards ("unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion"), but it does not require that a court must consider every standard in every circumstance.

The executive director's "Investigation Summary" for Lampley's complaint stated in relevant part:
Complainant alleged that Respondent discriminated against him because of his sex and in retaliation. By sex Complainant means sexual orientation. As sexual orientation is not protected from discrimination by the Missouri Human Rights Act, complaining about harassment because of sexual orientation is also not protected by the Missouri Human Rights Act.
The executive director's "Investigation Summary" for Frost's complaint stated in relevant part:
Complainant alleged that Respondent discriminated against her because of her association with someone who is gay and in retaliation for complaining about it. As sexual orientation is not protected from discrimination by the Missouri Human Rights Act, discrimination and retaliation because of associating with someone who is gay is also not protected by the Missouri Human Rights Act.

Lampley and Frost's appellants' brief expressly concedes they "are not addressing whether the MHRA covers sexual orientation discrimination." In their reply brief, however, they argue for the first time the MHRA does cover discrimination based on sexual orientation. Issues raised for the first time in a reply brief are not properly before this Court and will not be considered. Newsome v. Kan. City, Mo. Sch. Dist. , 520 S.W.3d 769, 777 n.7 (Mo. banc 2017) ; Berry v. State , 908 S.W.2d 682, 684 (Mo. banc 1995).

As noted, Lampley and Frost's other point on appeal argues the MHRA covers sex stereotyping, an argument that need not be reached if their pleading argument fails.

The principal opinion and Judge Wilson's concurring opinion wrongly review the circuit court's decision de novo. Because Lampley and Frost allege in their opening brief that the executive director abused her discretion, any review of the executive director's actions in this matter should be limited to that standard. As explained above, the petitions filed by Lampley and Frost in circuit court did not seek nor specify review by one or more of the standards provided by § 536.150.1. Nonetheless, Lampley and Frost allege in their supplemental briefing that "the circuit court should have decided whether the director's decision was 'unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involve[d] an abuse of discretion' " pursuant to § 536.150.1. The principal opinion and Judge Wilson's concurring opinion likewise forgive Lampley's and Frost's lack of specificity in their original pleadings and hold open all standards of review under § 536.150.1, arguing the language of § 536.150.1 does not limit Lampley and Frost to the abuse of discretion standard they alleged in their opening brief. But this ignores the discretionary nature of mandamus in general. See n.7, supra (citing Meiners , 309 S.W.3d at 394 ). Despite contrary arguments, it is difficult for this Court to fault the circuit court for not reviewing the executive director's decision under one or more of the standards provided by § 536.150.1 when Lampley and Frost did not ask the court to do so in their petitions and specifically sought mandamus relief.

Clearly, these complaints were relevant to Lampley and Frost. The language of this opinion should not be taken to minimize or justify the actions alleged to have been committed by Lampley's and Frost's two supervisors.

The portion of Lampley's complaint referencing "stereotypical attributes" alleges as follows:
[Lampley's supervisors] have knowledge that I am gay and that I do not exhibit the stereotypical attributes of how a male should appear and behave. [Supervisor 1] first learned that I was gay in June 2013 after I complained to him about a co-worker sexually harassing and soliciting me. On or about June 2013 [Supervisor 2] learned that I was gay after [Supervisor 1] shared my reported complaint about this same sexual harassment and solicitation. Similarly situated co-workers in the [workplace] are treated differently than me. These similarly situated co-workers are not gay, and they exhibit the stereotypical attributes of how a male or female should appear and behave.
The portion of Frost's complaint referencing "stereotypical attributes" alleges as follows:
[Frost's supervisors] have knowledge that Lampley is gay and that Lampley does not exhibit the stereotypical attributes of how a male should appear and behave. [Supervisor 1] first learned that Lampley was gay in June 2013 and [Supervisor 2] learned that Lampley was gay in 2013 after [Supervisor 1] shared Lampley's complaint about sexual harassment and solicitation with [Supervisor 2].... [Employer, Supervisor 1, Supervisor 2, and HR Manager] treat me differently than my co-workers and created a hostile work environment for me because of my association with Lampley, a male who is gay and who does not exhibit the stereotypical attributes of how a male should appear and behave.

The principal opinion claims this opinion wrongly characterizes Lampley's and Frost's complaints as alleging discrimination based on sexual orientation rather than sex stereotyping. This opinion, however, does not characterize the complaints in any manner but merely contends the executive director did not abuse her discretion by finding the complaints allege discrimination based on sexual orientation rather than sex stereotyping based on the allegations made in the complaints. If this Court were asked to interpret Lampley's and Frost's complaints de novo, this opinion may very well find differently than the executive director. But that is not what this Court has been asked to do. Rather, Lampley and Frost argue in their opening brief that "The Commission abused its discretion by interpreting the Charges in a way to avoid coverage and failing to consider the plain language of the Charges." (Emphasis added). Lampley and Frost chose to pursue mandamus relief under § 536.150. They also chose to seek review under the "abuse of discretion" standard rather than under one or more of the other standards provided in § 536.150.1. Therefore, this opinion does not interpret or characterize the complaints, but reviews the actions of the commission and executive director only for an abuse of discretion pursuant to § 536.150, as requested by Lampley and Frost, all the while adhering to the dictates and limitations of mandamus and "abuse of discretion" review provided by § 536.150.

As noted, the question of whether the MHRA covers discrimination based on sexual orientation is not before this Court. And because the executive director did not abuse her discretion in determining the complaints pleaded discrimination based on sexual orientation rather than sex stereotyping, this Court should not reach the hypothetical question of whether the MHRA covers discrimination based on sex stereotyping. These issues must be left for another day when the issues are properly brought before this Court.