

# SUPREME COURT OF MISSOURI
## en banc

HAROLD LAMPLEY and )  *Opinion issued February 26, 2019*
RENE FROST, )
          )
    Appellants, )
          )
v. )  No. SC96828
          )
THE MISSOURI COMMISSION ON )
HUMAN RIGHTS and )
ALISA WARREN, )
          )
    Respondents. )
          )

**APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY**
The Honorable Patricia S. Joyce, Judge

Harold Lampley (hereinafter, "Lampley") and Rene Frost (hereinafter, "Frost")

appeal from the circuit court's grant of summary judgment in favor of the Missouri

Commission on Human Rights (hereinafter, "the Commission") on their consolidated

allegations of violations of the Missouri Human Rights Act, section 213.010 *et seq.*, RSMo

2000 (hereinafter, "the Act").[1] The circuit court's judgment is reversed, and the case is remanded.[2]

## Factual and Procedural History

The facts viewed in the light most favorable to Lampley and Frost are as follows: In July 2014, Lampley filed charges of sex discrimination and retaliation against his employer, the State of Missouri, Department of Social Services Child Support Enforcement Division (hereinafter, "Employer"), pursuant to sections 213.055.1(1) and 213.070.1(2) of the Act. Lampley's "Charge of Discrimination" form submitted to the Commission provided a list of discriminatory actions and instructed the complainant to check the appropriate boxes. Lampley checked boxes indicating he was discriminated against based on "sex" and "retaliation." Lampley also provided a more detailed factual summary of his claims.

In his factual recitation, Lampley stated he is a gay man. Lampley elaborated he does not exhibit the stereotypical attributes of how a male should appear and behave. Lampley alleged other similarly situated co-workers, those who were not gay and exhibited stereotypical male or female attributes, were treated differently. Because he exhibited non-stereotypical behaviors, Lampley asserted he was subjected to harassment at work.

[1] All statutory references are to RSMo 2000 unless otherwise indicated. The American Civil Liberties Union of Missouri Foundation filed a brief on appeal as *amicus curiae* in support of Lampley and Frost.
[2] This Court has jurisdiction pursuant to Mo. Const. art. V, sec. 10.

Further, Lampley alleged he was grossly underscored in a performance evaluation in retaliation for his complaints.

In December 2014, Frost submitted her "Charge of Discrimination" form to the Commission. The charge of discrimination contained the same list of discriminatory actions and instructions as Lampley's. Frost checked boxes indicating she was discriminated due to "retaliation" and "other." Following the indication of "other" discrimination, Frost wrote, "Association with person protected by section 213.010 *et seq.*" Frost also provided a more detailed factual summary of her claims.

In her factual recitation, Frost detailed her close friendship with Lampley, noting his non-stereotypical attributes of how a male should appear and behave. Frost alleged she filed a complaint against Employer for violating its policy and breaching confidentiality after publicly announcing her performance review. Frost believes Employer's conduct stemmed from her friendship with Lampley. After filing her complaint, Employer moved Frost's desk away from Lampley and other co-workers with whom she collaborated. Frost was informed she and Lampley were no longer allowed to eat lunch together. Unlike other employees, Frost and Lampley had vacation time docked for meeting with their union representative. Frost alleged she continued to suffer from Employer's verbal abuse, threats about her performance review, and other harassing behaviors.

The Commission opened investigations into Lampley and Frost's claims. The Commission's investigator assumed Lampley's claim of discrimination based on sex meant "sexual orientation." The investigator concluded sexual orientation is not protected by the Act. Similarly, the investigation summary of Frost's claim asserted her claim of

3

"association with someone who is gay" is not protected by the Act. Subsequently, the Commission terminated its proceedings in both matters in 2015, stating Lampley's and Frost's complaints do not involve a category covered by the Act.[3] The matters were closed administratively.

Lampley and Frost filed petitions for administrative review or, alternatively, a writ of mandamus, asking the circuit court to direct the Commission to issue notices of right-to-sue letters. Both petitions made the same averments as in their respective charges of discrimination. The circuit court consolidated their petitions. The parties filed cross-motions for summary judgment. The circuit court sustained the Commission's summary judgment motion, finding Lampley's and Frost's claims fail under *Pittman v. Cook Paper Recycling Corp.*, 478 S.W.3d 479 (Mo. App. W.D. 2015). Lampley and Frost appeal.

**Noncontested Case**

In any administrative matter, the determination of whether the proceeding was contested or noncontested is determined as a matter of law. *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 506 (Mo. banc 2009).

> Contested cases provide the parties with an opportunity for a formal hearing with the presentation of evidence, including sworn testimony of witnesses and cross-examination of witnesses, and require written findings of fact and conclusions of law. The review of a contested case is a review by the trial court of the record created before the administrative body …. Non-contested cases do not require formal proceedings or hearings before the administrative body. As such, there is no record required for review. In the review of a non-contested decision, the circuit court does not review the administrative record, but hears evidence, determines facts, and adjudges the validity of the agency decision.

---

[3] The Commission issued its notice of termination to Lampley in May 2015 and its notice of termination to Frost in July 2015.

4

*Furlong Co., Inc. v. City of Kansas City*, 189 S.W.3d 157, 165 (Mo. banc 2006) (internal citations omitted). Because there was no hearing at the Commission, this case is a noncontested case. *Kinzenbaw v. Dir. of Rev.*, 62 S.W.3d 49, 52 (Mo. banc 2001).

Section 536.150 governs the standard of judicial review for noncontested cases. *Armstrong*, 273 S.W.3d at 508. While Lampley's and Frost's petitions stated they were seeking mandamus review pursuant to section 536.150, review of a noncontested case may be "by suit for injunction, certiorari, mandamus, prohibition or other appropriate action …." Section 536.150.1.[4] There is no limitation, as suggested by the dissenting opinion, a noncontested case must proceed by writ of mandamus because the statute governing noncontested review clearly delineates multiple avenues to pursue relief. "The circuit court does not review the record for competent and substantial evidence, but instead conducts a *de novo* review in which it hears evidence on the merits, makes a record, determines the facts and decides whether the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious or otherwise involves an abuse of discretion." *Id*.

---

[4] This Court ordered supplemental briefing to address whether Lampley and Frost adequately sought noncontested case review via a writ of mandamus in the circuit court. Prior to this Court's order, there was no challenge to Lampley and Frost seeking review in the circuit court. As section 536.150.1 provides for multiple avenues to seek noncontested case relief, there is no statutory requirement that review of a noncontested case must be by a writ of mandamus only. *See, e.g., Hagely v. Bd. of Educ. of Webster Groves Sch. Dist.*, 841 S.W.2d 663 (Mo. banc 1992); *Kinzenbaw*, 62 S.W.3d 49; *Armstrong*, 273 S.W.3d 504. A writ of mandamus may be an appropriate avenue for relief in some cases. *See State ex rel. Tivol Plaza, Inc. v. Mo. Comm'n on Human Rights*, 527 S.W.3d 837 (Mo. banc 2017); *Bartlett v. Mo. Dep't of Ins.*, 528 S.W.3d 911 (Mo. banc 2017).

The dissenting opinion finds this case is procedurally deficient based upon the guidelines set forth in the *concurring* opinion in *U.S. Dept. of Veterans Affairs v. Boresi*, 396 S.W.3d 356, 364 (Mo. banc 2013). The concurring opinion in *Boresi* sets forth the procedure for mandamus in the circuit court and suggests a court should not issue a writ that fails to follow that procedure strictly. *Id*. The *Boresi* concurring opinion is not binding on this Court. *Canary Taxicab Co. v. Terminal Ry. Ass'n of St. Louis*, 294 S.W. 88, 92 (Mo. banc 1927). The principal opinion acknowledged the proper writ procedure, but noted the parties and the circuit court's failure to follow the writ procedure strictly, stating,

> [T]his Court is exercising its discretion to consider the matter on the merits and issue the writ because the parties, who already have litigated the matter fully, were not at fault and should not be required to initiate a new writ proceeding due to the circuit court's failure to follow the procedure proscribed by the rules.

*Boresi*, 396 S.W.3d at 359 n.1. Further, the principal opinion recognized this Court is not required to exercise discretion in future matters. *Id*. However, the Court did not foreclose the possibility of exercising its discretion either.

Following *Boresi*, this Court was presented with two situations wherein the parties failed to follow the proper writ procedure. *See Tivol*, 527 S.W.3d at 842 and *Bartlett*, 528 S.W.3d 913, issued the same day in 2017. In *Tivol*, this Court opted to exercise its discretion as in *Boresi* because the case was litigated "as if the circuit court had issued a preliminary order in mandamus and then denied the permanent writ." *Tivol*, 527 S.W.3d at 842. Further, the Court noted the lack of fault on the part of the parties and the importance of the issues in the case. *Id*. Again the Court cautioned, "Parties should not expect unending tolerance from the appellate courts for such failures to follow Rule 94.04,

6

however, particularly when the question is not of such general interest or when the parties were made aware of the failure to follow Rule 94 ….” *Id.*[5]

In contrast, in *Bartlett*, “this Court declined to exercise its discretion to treat the summons as a preliminary order, for in that case the plaintiff told the clerk to issue a summons rather than treat the matter as a writ and repeatedly declined to follow the procedure applicable to writs despite numerous motions by the State requesting the court order the plaintiff to do so.” *Tivol*, 527 S.W.3d at 842. The Court reiterated its warning from *Boresi*: “This Court is not required to exercise its discretion in like manner in the future.” *Bartlett*, 528 S.W.3d at 914. Then, this Court dramatically declared the “future has now arrived.” *Id*. This Court did not announce that the arrival of the future also meant an obliteration of the past. Neither *Boresi*, *Tivol*, nor *Bartlett* restricts this Court’s ability to choose to exercise its discretion, if appropriate, in another case.

This case is more comparable to *Tivol* than to *Bartlett*. None of the parties nor the circuit court objected to or questioned the procedure. Additionally, addressing charges of sex discrimination based upon sexual stereotyping evidence is an important issue this Court has not addressed. Most importantly, Lampley and Frost filed their petitions in the circuit

---

[5] While the dissenting opinion cites *R.M.A. v. Blue Springs R-IV Sch. Dist.*, 477 S.W.3d 185, 189 (Mo. App. W.D. 2015), in support of its proposition Rule 94 compliance is mandatory, *R.M.A.* actually states, “And if Rule 94 is not followed, then there is no right of appeal from the denial of a permanent writ of mandamus (even if on the merits), with the narrow proviso that an appeal may be permitted as a matter of discretion where a permanent writ of mandamus is denied on the merits after a trial court has issued a summons that can be fairly characterized as the ‘functional equivalent’ of a preliminary writ.”

court in 2015.  This Court's 2017 guidance in *Tivol* and *Bartlett* was not available at the time this case was presented to the circuit court.  Hence, while the litigants should strive to follow the proper procedure in any litigation, it is clear the participants in this case believed they were acting properly.  This Court will not penalize them for failing to follow precedent not established at the time.

## Standard of Review

This Court's review of an appeal from summary judgment is *de novo*.  *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).  When considering an appeal from summary judgment, this Court reviews the record in the light most favorable to the party against whom judgment was entered and affords that party the benefit of all reasonable inferences.  *Lewis v. Gilmore*, 366 S.W.3d 522, 524 (Mo. banc 2012).  Summary judgment is appropriate when the record demonstrates there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Hargis v. JLB Corp.*, 357 S.W.3d 574, 577 (Mo. banc 2011).  "Summary judgment seldom should be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence."  *Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 588 (Mo. banc 2013) (quoting *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664 (Mo. banc 2009)).[6]

---

[6] While espousing a simplistic approach to the standard of review, the concurring opinion has mixed standards and avoided the honest intellectual exercise required under the law when adhering to the proper standard of review.  By mixing the standards of review in this case, the concurring opinion's approach could lead to incorrect analysis in future cases.

**The Act**

Section 213.055.1(1)(a) provides it is an unlawful employment practice "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of … sex …." "When reviewing cases under the [Act, appellate courts] are guided by both Missouri law and any federal employment discrimination (i.e., Title VII) case law that is consistent with Missouri law." *Diaz v. Autozoners, LLC*, 484 S.W.3d 64, 76 (Mo. App. W.D. 2015) (quoting *Tisch v. DST Sys., Inc.*, 368 S.W.3d 245, 252 n.4 (Mo. App. W.D. 2012)). The Act "is clear that if an employer considers age, disability or other protected characteristics when making an employment decision, an employee has made a submissible case for discrimination." *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 383 (Mo. banc 2014).

Further, the Act is a remedial statute. *Howard v. City of Kansas City*, 332 S.W.3d 772, 779 (Mo. banc 2011). "Remedial statutes should be construed liberally to include those cases which are within the spirit of the law and all reasonable doubts should be construed in favor of applicability to the case." *Mo. Comm'n on Human Rights v. Red Dragon Rest., Inc.*, 991 S.W.2d 161, 166-67 (Mo. App. W.D. 1999) (quoting *State ex rel. Ford v. Wenskay*, 824 S.W.2d 99, 100 (Mo. App. E.D. 1992)).

**Applicability of *Pittman***

The circuit court relied on *Pittman* to justify the Commission's termination of Lampley's and Frost's claims. In *Pittman*, James Pittman (hereinafter, "Pittman") asserted his employer discriminated against him because he was a homosexual male. Pittman stated he suffered disparaging comments about his lifestyle at work and was treated more harshly

9

than a heterosexual male when he terminated his long-term relationship. *Pittman*, 478 S.W.3d at 481. Pittman claimed his employer "caused the workplace to be an objectively hostile and abusive environment based on sexual preference." *Id*. Pittman brought a claim for sex discrimination under the Act, alleging he was harassed and terminated from his employment because of his sexual orientation. *Id*. at 482. The circuit court dismissed Pittman's petition for failure to state a claim. *Id*. at 480. A divided panel of the Western District affirmed the circuit court's judgment, finding the Act does not prohibit discrimination on the basis of sexual orientation. *Id*. at 485.

The circuit court in this case relied upon *Pittman*'s holding the Act does not include claims for sex discrimination based upon sexual orientation and extended that rationale to include claims for sex discrimination based upon sex stereotyping. The circuit court reasoned sex stereotyping, like sexual orientation, is not listed specifically in the Act, and the Commission's exclusion of Lampley and Frost's claims was reasonable.

*Pittman*, however, declined to address whether sex discrimination based on sex stereotyping was covered under the Act because that claim was not at issue in *Pittman*. Contrary to the circuit court's suggestion, *Pittman* provides no support for the Commission's decision. Lampley's sexual orientation was merely incidental to the sex discrimination complaints filed. Lampley and Frost specifically stated they were discriminated against on the basis of sex because Lampley did not conform to generally held sexual stereotypes. Because the Commission erroneously characterized their claims as sexual orientation discrimination, the circuit court's reliance on *Pittman* is misplaced.

**Sex Discrimination**

In Lampley and Frost's charges of discrimination filed with the Commission and in their petitions with the circuit court, they alleged they were subjected to sex discrimination by Employer because of Lampley's non-stereotypical characteristics. Lampley and Frost assert the circuit court erred in issuing summary judgment in favor of Employer because the Act covers sex discrimination.

The dissenting opinion wrongly characterizes Lampley and Frost as only seeking relief from sexual stereotyping on appeal and the underlying charge before the Commission was based upon sexual orientation. This assertion is wrong. In both charges of discrimination, Lampley and Frost stated Lampley was gay, but this fact is incidental to the basis for the discrimination. They asserted they were discriminated against because Lampley does "not exhibit the stereotypical attributes of how a male should appear and behave." They also asserted, "Similarly situated co-workers … are treated differently than [Lampley]. These similarly situated co-workers are not gay, and they exhibit the stereotypical attributes of how a male or female should appear and behave." There was no allegation the discrimination was based upon his sexual orientation. Further, there are multiple allegations Lampley, and by association Frost, was discriminated against because of his sex.

The Act clearly provides it is an unlawful employment practice for an employer to discriminate on the basis of sex. Section 213.055.1(1)(a). For an employee to establish a *prima facie* case of sex discrimination in the workplace, the employee must demonstrate: (1) the employee was a member of a protected class; (2) the employee was qualified to perform the job; (3) the employee suffered an adverse employment action; and (4) the

11

employee was treated differently from other similarly situated employees of the opposite sex. *Ressler v. Clay Cty.*, 375 S.W.3d 132, 141 (Mo. App. W.D. 2012); *Ruppel v. City of Valley Park*, 318 S.W.3d 179, 185 (Mo. App. E.D. 2010). "The fourth element of a *prima facie* discrimination case also can be met if the employee provides 'some other evidence that would give rise to an inference of unlawful discrimination.'" *Buchheit, Inc. v. Mo. Comm'n on Human Rights*, 215 S.W.3d 268, 277 (Mo. App. W.D. 2007) (quoting *Turner v. Gonzales*, 421 F.3d 688, 694 (8th Cir. 2005)).

Stereotyping may give rise to an inference of unlawful discrimination upon a member of a protected class. In *Price Waterhouse v. Hopkins*, 490 U.S. 228, 235, 109 S. Ct. 1775, 1791, 104 L. Ed. 2d 268 (1989), a female senior manager was denied partnership after partners referred to her as "macho" and needing "a course at charm school." She was advised that to become a partner she needed to "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Id*. at 251. The Supreme Court recognized when an employer relies upon sex stereotypes in its employment decisions, that evidence may support an inference of sex discrimination. *Id*. at 235. The Supreme Court explained, "[W]e are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group, for '[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.'" *Id*. at 251 (quoting *Los Angeles Dep't of Water and Power v. Manhart,* 435 U.S. 702, 707, n.13, 98 S. Ct. 1370, 1375, n.13, 55 L. Ed. 2d 657 (1978)).

12

Since *Price Waterhouse*, it is clear an employer who discriminates against "women because, for instance, they do not wear dresses or makeup, is engaging in sex discrimination *because the discrimination would not occur but for the victim's sex.*" *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1040 (8th Cir. 2010) (emphasis in original) (quoting *Smith v. City of Salem, Ohio*, 378 F.3d 566, 574 (6th Cir. 2004)). Further, "*Price Waterhouse* applies with equal force to a man who is discriminated against for acting too feminine." *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 874 (9th Cir. 2001).

In *Christiansen v. Omnicron Group, Inc.*, 852 F.3d 195, 199 (2d Cir. 2017), the Second Circuit upheld the district court's holding that sexual orientation discrimination is not protected by Title VII, but reversed its holding regarding the plaintiff's sexual stereotyping claim, relying on *Price Waterhouse*'s analysis to find a homosexual male had a cognizable claim under Title VII. The court found "gay, lesbian, and bisexual individuals do not have *less* protection under *Price Waterhouse* against traditional gender stereotype discrimination than do heterosexual individuals." *Id*. at 200-01 (emphasis in original). However, standing alone, the characteristic of being gay, lesbian, or bisexual cannot sustain a sex stereotyping claim. *Id*. at 201.[7] The court found, under *Price Waterhouse*, "at a minimum, 'stereotypically feminine' gay men *could* pursue a gender stereotyping claim

---

[7] Contrary to Judge Fischer's concurring and dissenting opinion, while the Second Circuit found the mere fact of being gay, lesbian, or bisexual could not support a sexual stereotyping claim, this does not equate with a conclusion by the principal opinion that discrimination based on sexual orientation is not covered under the Act. This principal opinion makes no such statement because the resolution of whether sexual orientation is or is not covered by the Act is not issue in this case.

13

under Title VII (and the same principle would apply to 'stereotypically masculine' lesbian women)." *Id*. at 200.

Federal courts have distinguished between discrimination based on sexual orientation and sex discrimination as evidenced by sex stereotyping. They have held *Price Waterhouse*'s sex stereotyping analysis applies to homosexual people who allege discrimination based upon their failure to conform to sex stereotypes. While a Missouri court has not had the opportunity to address a sex discrimination claim based upon sexual stereotyping until now, the rules and regulations promulgated by the Commission support applying this analysis here as well. The Commission has the power and duty to "adopt, promulgate, amend, and rescind suitable rules and regulations to carry out the provisions of this chapter and the policies and practices of the [C]ommission in connection therewith." Section 213.030.1(6). When a complaint is filed with the Commission, the Commission needs to investigate the complaint properly. Section 213.075.3. "The investigation, determination of probable cause and conciliation shall be conducted according to such rules, regulations and guidelines as the [C]ommission shall prescribe." *Id*.

To comply with its statutory duties, the Commission established Rule 8 CSR 60-3.040. Rule 8 CSR 60-3.040(2)(A)2 provides an employer may not refuse "to hire an individual based on stereotyped characterizations of the sexes …. The principle of nondiscrimination requires that individuals be considered on the basis of individual capacities and not on the basis of any characteristics generally attributed to the group …."

Because the Commission's promulgated rules already characterize sexual stereotyping as an unlawful hiring practice, it follows that sexual stereotyping during

14

employment is an unlawful employment practice. These rules are an application of the holdings of the United States Supreme Court and other federal courts. Accordingly, under these regulations and federal law, an employee who suffers an adverse employment decision based on sex-based stereotypical attitudes of how a member of the employee's sex should act can support an inference of unlawful sex discrimination. Sexual orientation is incidental and irrelevant to sex stereotyping. Sex discrimination is discrimination, it is prohibited by the Act, and an employee may demonstrate this discrimination through evidence of sexual stereotyping.

The Commission had the statutory authority to investigate Lampley's and Frost's claims, but the Commission unreasonably and erroneously assumed that because Lampley was homosexual, there was no possible sex discrimination claim other than one for sexual orientation. Lampley and Frost should have been allowed to demonstrate whether the alleged sexual stereotyping motivated Employer's alleged discriminatory conduct. The Commission had the authority to issue a right-to-sue letter so the trier of fact could then determine whether their claims for sex discrimination were due to sexual stereotyping. However, the Commission terminated its investigation into Lampley and Frost's claims of sex discrimination, thereby precluding any investigation of genuine issues of material fact. The circuit court's grant of summary judgment in favor of the Commission was incorrect; the Commission erred in terminating its inquiry.

Lampley and Frost request reversal of the Commission's determination that it had no authority to investigate their claims and an order directing the Commission to reopen the administrative proceedings. However, the time for administrative investigation has

expired because the Commission is limited to 180 days to process a complaint once the complaint is filed. Section 213.111.1. Once the 180-day time limitation has expired, the Commission must cease all activity on a complaint and issue a right-to-sue letter. *Id*.; *Tivol*, 527 S.W.3d at 845. Because it has been more than 180 days since Lampley and Frost filed their charges of discrimination, the Commission has no authority to investigate their claims. The appropriate remedy would be to construe their request as seeking right-to-sue letters and direct the Commission to provide such letters.

### Conclusion

The circuit court's judgment is reversed, and the case is remanded. Upon remand, the circuit court is directed to remand to the Commission with instructions to issue Lampley and Frost right-to-sue letters.

_____
GEORGE W. DRAPER III, JUDGE


Breckenridge and Stith, JJ., concur; Wilson, J., concurs in separate opinion filed; Russell, J., concurs in opinion of Wilson, J.; Fischer, C.J., concurs in part and dissents in part in separate opinion filed; Powell, J., dissents in separate opinion filed.

16



# SUPREME COURT OF MISSOURI
## en banc

HAROLD LAMPLEY and )
RENE FROST, )
           )
           Appellants, )
           )
v. )       No. SC96828
           )
THE MISSOURI COMMISSION ON )
HUMAN RIGHTS and )
ALISA WARREN, )
           )
           Respondents. )
           )

## CONCURRING OPINION

The question presented in this case is whether the charges filed before the

Missouri Commission on Human Rights ("Commission") by Harold Lampley

("Lampley") and Rene Frost ("Frost") (collectively, "the Claimants") properly invoke the

Commission's jurisdiction because they state claims under the Missouri Human Rights

Act (MHRA). Those claims do invoke the Commission's jurisdiction and, therefore, the

principal opinion is correct in holding that the circuit court's judgment in this case should

be reversed and the case remanded for further proceedings.

This case should be analyzed and disposed of entirely on the basis of whether the facts alleged by Claimants assert sex discrimination claims covered by the MHRA. As explained below, they plainly do. But the principal opinion does not stop there. Instead, it proceeds to opine on whether "sex stereotyping," as discussed in the Title VII context in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), is a type of sex discrimination under the MHRA. But, as explained by this Court in *R.M.A., by his next friend: Rachelle Appleberry v. Blue Springs R-IV School District*, __ S.W.3d __, Slip Op. at 5-6 n.4 (Mo. banc 2019) (No. SC96683), also handed down on this date:

> [T]he MHRA does not provide for "types" of sex discrimination claims; a claim is either a claim of sex discrimination or it is not. Rather than a "type" of sex discrimination claim, "sex stereotyping" merely is one way to ***prove*** a claim of sex discrimination, i.e., "sex stereotyping" can be evidence of sex discrimination. *Price Waterhouse*, itself, makes this clear:
>
> > Remarks at work that are based on sex stereotypes do not inevitably ***prove*** that gender played a part in a particular employment decision. The plaintiff ***must show*** that the employer actually relied on her gender in making its decision. In making this showing, stereotyped remarks can certainly ***be evidence*** that gender played a part.
>
> *Id.* at 251 (emphasis added). Accordingly, because the issue is whether R.M.A.'s petition states a claim for sex discrimination, this Court must leave for another day consideration of the proof of that claim, including any proof of "sex stereotyping."

 [Emphasis in original.]

Here, as in *R.M.A.*, the charges filed by both Claimants before the Commission allege ultimate facts sufficient to prove claims of sex discrimination under the MHRA, and questions of how or whether Claimants can prove their claims are premature.

**BACKGROUND**

Lampley worked for the Missouri Department of Social Services ("Social Services") beginning in May 2013. In December 2014, Lampley filed an Amended Charge of Discrimination ("Amended Charge") under section 213.055[1] with the Commission and the Equal Employment Opportunity Commission ("EEOC"). In particular, Lampley alleges his supervisors at Social Services, Steven Kissinger ("Kissinger") and Cathy Woods ("Woods") (and, collectively with Social Services, "Employer"), created a hostile work environment and discriminated against Lampley because of Lampley's sex.

Also in December 2014, Frost filed an Amended Charge of sex discrimination by association under section 213.070.1(4) with the Commission and EEOC. In particular, Frost alleges she suffered discriminatory treatment from Employer because of her association with Lampley, who – in turn – suffered sex discrimination in violation of the MHRA.

Lampley's and Frost's Amended Charges were timely filed with the Commission, but those charges were dismissed for lack of jurisdiction because the Commission's executive director determined Lampley did not allege sex discrimination, which is prohibited by the MHRA, but instead alleged only discrimination on the basis of sexual orientation, which the executive director concluded is not prohibited by the MHRA. As a

---

[1] Unless otherwise indicated, all statutory citations are to RSMo 2000.

3

result, all proceedings were terminated with respect to Lampley's charge (and Frost's charge based on association with Lampley), and no notices of right to sue were issued.

Lampley and Frost filed petitions for judicial review of this administrative decision by the Commission and its executive director, Alisa Warren, in the Cole County Circuit Court.[2] The petitions were consolidated. The parties filed cross-motions for summary judgment on whether the Commission had jurisdiction over Lampley's and Frost's cases. The circuit court granted the Commission's motion on the ground that – because Lampley's and Frost's charges were based solely on claims of discrimination based on sexual orientation and gender stereotyping, neither of which the circuit court concluded were prohibited by the MHRA – the Commission had no jurisdiction to consider their charges.

---

[2] In a request for supplemental briefing, this Court raised two issues: (1) whether Claimants adequately sought judicial review of this noncontested case pursuant to section 536.150, and (2) whether the procedural requirements of Rule 94 for petitions for writs of mandamus were followed and the ordinary standards for mandamus were applied. It seems clear that, at the time these petitions were filed, Claimants were unsure whether they were seeking judicial review of a contested case under section 536.100, RSMo Supp. 2013, or a noncontested case under section 536.150. Though it is clear, now, that this is a noncontested case, such confusion would have been understandable at that time. In any event, the Commission concedes in its supplemental brief that Claimants "tried to bring this action through a petition for a writ of mandamus under Section 536.150," and the circuit court plainly understood that this was so. Moreover, a petition for writ of mandamus is not the only means of seeking judicial review of a noncontested case. Section 536.150 plainly provides a party may seek such relief "by suit for injunction, certiorari, mandamus, prohibition or other appropriate action." No matter how the judicial review is sought, however, the standard governing whether the party seeking judicial review should be given relief is that set forth in section 536.150 (i.e., "whether such decision … is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion"), not the standard governing petitions for writs of mandamus generally. Missourians have a constitutional right to seek review of administrative decisions, whether resulting from a contested case or a noncontested case. Mo. Const. art. V, § 18. As a result, it ill behooves this Court to frustrate that right by injecting procedural hurdles to such review that the parties have not raised and the circuit court did not reach.

4

# ANALYSIS

This Court's review of an appeal from summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Even though the procedural contexts are different,[3] the analysis of these claims is precisely the same as that performed in *R.M.A.* The only question is whether the Claimants have pleaded sufficient ultimate (not merely evidentiary) facts to state claims under the MHRA. *R.M.A.*, __ S.W.3d. __, Slip Op. at 4-5; *Scheibel v. Hillis*, 531 S.W.2d 285, 290 (Mo. banc 1976). "When considering whether a petition fails to state a claim upon which relief can be granted, this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *Bromwell v. Nixon*, 361 S.W.3d 393, 398 (Mo. banc 2012). "The Court does not weigh the factual allegations to determine whether they are credible or persuasive." *Id.* Nor does it matter that "these averments may well be difficult to ... prove at trial." *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 312 (Mo. banc 1993). The only thing that matters is whether "the facts alleged meet the elements of a recognized cause of action." *Bromwell*, 361 S.W.3d at 398.

---

[3] In *R.M.A.*, the plaintiff received a right to sue letter from the Commission and appealed after his MHRA claim was dismissed with prejudice by the circuit court. *R.M.A.*, __ S.W.3d ___, Slip Op. at 2-3. Here, Claimants contend the Commission's executive director erred by administratively closing proceedings on their charges before the Commission for lack of jurisdiction on the ground that the charges did not assert claims under the MHRA. In both cases, the only question before the Court is whether the facts alleged and reasonable inferences drawn from those facts – taken as true – are sufficient to state a claim under the MHRA. Because Claimants' charges allege facts sufficient to state claims under the MHRA for sex discrimination (and discrimination due to association with someone claiming sex discrimination), the Commission (and/or its executive director) were wrong to close those charges for lack of the Commission's jurisdiction.

Lampley claims he suffered sex discrimination in violation of section 213.055. This statute provides, in relevant part:

> It shall be an unlawful employment practice … [f]or an employer, because of the … sex … of any individual … to … discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex … [t]o limit, segregate, or classify his employees … in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's … sex ….

§ 213.055.1.

As explained in *R.M.A.*, allegations of the ultimate facts are all that is required, and one reliable source for determining what the ultimate facts are with respect to a given cause of action is the verdict director that would be given if the matter were tried to a jury. *R.M.A.*, __ S.W.3d at __, Slip Op. at 4-5; *Johnson v. Auto Handling Corp.*, 523 S.W.3d 452, 463 (Mo. banc 2017). A verdict director for Lampley's sex discrimination claim, if it were tried to a jury, would have to conform to Missouri Approved Instruction (MAI) 38.01(A). Though the wording would vary at trial based upon the proof, for present purposes of evaluating Lampley's allegations, such a verdict director would require proof as follows:

> Your verdict must be for plaintiff [Lampley] if you believe:

> First, defendant [Employer] discriminated against plaintiff with respect to his compensation, terms, conditions, or privileges of employment, and

6

Second, plaintiff's male sex was a contributing factor[4] in such

discrimination, and

Third, as a direct result of such conduct, plaintiff sustained damage.

In other words, Lampley's charge before the Commission was required to allege

ultimate facts sufficient to show: (1) he suffered an act of discrimination prohibited by

section 213.055; (2) he is a member of a protected class, i.e., male; (3) causation, i.e., his

male sex was a contributing factor (or motivating factor) in that discrimination; and

(4) damages. Lampley's Amended Charge alleges ample facts to meet these

requirements.

First, Lampley alleges ultimate facts sufficient to show discriminatory treatment in

his employment at Social Services. His Amended Charge states:

- "Starting in September 2013, Kissinger began to verbally harass me by speaking to me in an aggressive and condescending manner, and he would direct me to report to his office for closed-door meetings about my performance." Amended Charge at ¶ 7.

- "Kissinger's verbal abuse, banging on my cubical walls and repeated orders to report to his office are harassing to me because those actions are humiliating, intimidating, and bullying." *Id*. at ¶ 9.

- "I have very limited ability to respond because Kissinger is my boss and I fear retaliation in the form of poor performance evaluations and increased harassment." *Id.*

---

4 As in *R.M.A.*, the Court need not – and, therefore, does not – decide whether the change from the "contributing factor" test to the "motivating factor" test brought about in 2017 by amendments to section 213.010(2) and (19), RSMo Supp. 2017, would apply to this case. The Court need not resolve that question because Lampley alleges he was discriminated against "because of" his sex. This allegation is more akin to "but for" causation and, even though such strict causation is not required under the MHRA, an allegation of "but for" causation is a sufficient allegation under either the "contributing factor" test or the "motivating factor" test. *R.M.A.*, __ S.W.3d __, Slip Op. at 4 n.3

- "After I first complained to Woods, Kissinger threatened me by telling me that he writes reviews and that I have no reason to talk to anyone else besides him." *Id.* at ¶ 11.

- "My probationary review of April 18 and April 21, 2014 by Kissinger was lower and inconsistent with my actual numbers and performance." *Id.* at ¶ 13.

Accordingly, Lampley's Amended Charge plainly pleads sufficient ultimate facts to meet the first element of a sex discrimination claim under the MHRA.

Second, Lampley alleges ultimate facts sufficient to show membership in a protected class, i.e., of the male sex. In his Amended Charge, he states, "I am a male …." *Id.* at ¶ 2. This allegation, by itself, is sufficient for purposes of determining whether Lampley's charge sufficiently alleges the second element of a claim under the MHRA.[5]

Third, Lampley alleges sufficient ultimate facts to show that his male sex was a contributing factor in Employer's adverse employment action. He alleges: "The Department of Social Services, Kissinger and Woods treat me differently than my co-workers and created a hostile work environment for me because of my sex." *Id.* at

_____

[5]  Both the Commission's executive director and the circuit court erred because they persisted in characterizing Lampley's Amended Charge as claiming discrimination based on sexual orientation. The MHRA protects against, *inter alia*, discrimination in employment based on sex. § 213.055. Here, Lampley alleges Employer took adverse employment action against him "because of [his] sex." Amended Charge at ¶ 9. Lampley does not allege Employer took adverse employment action against him because of his sexual orientation. Although Lampley alleges he is gay and does not exhibit stereotypically male attributes, he properly alleges the discriminatory conduct was based on his male sex, and, therefore, whether or not Lampley is gay, or whether or not Lampley displayed stereotypically male attributes, is irrelevant for purposes of determining whether he alleged sufficient ultimate facts to state a claim under the MHRA for sex discrimination.

8

¶ 19. As with the second element, this allegation – alone – is sufficient to meet the third element of a sex discrimination claim under the MHRA.

Fourth, Lampley alleges ultimate facts sufficient to show damages. His Amended Charge states: "As a result of the conduct of Kissinger, Woods and other management in the Department of Social Services, I have suffered damages, included but not limited to emotional distress and loss of enjoyment of life." *Id*. at ¶ 21. This statement is sufficient to meet the fourth element, i.e., damages.

Because Lampley alleges sufficient ultimate facts to establish all four of the elements of a sex discrimination claim under the MHRA, the Commission's executive director erred in determining the Commission had no jurisdiction over Lampley's claim, and the circuit court erred in failing to grant Lampley relief. And, because this case can be disposed of entirely as a routine application of the pleading standards, the principal opinion should not have gone on to consider other issues such as whether *Pittman v. Cook Paper Recycling Corp.*, 478 S.W.3d 479 (Mo. App. 2015), was wrongly decided and whether sex discrimination can be proved by evidence of "sex stereotyping."

The analysis of Frost's allegations is similar but somewhat different because her claim is that she was discriminated against based on her association with Lampley. Under section 213.070, "It shall be an unlawful discriminatory practice … [t]o discriminate in any manner against any other person because of such person's association with any person protected by this chapter." § 213.070. Because Lampley adequately alleges a claim of sex discrimination under the MHRA – which Frost re-alleges in her Amended Charge – Frost was required to allege sufficient ultimate facts to show: (1) she

9

suffered an act of discrimination prohibited by section 213.070; (2) she is associated with Lampley, who is male (i.e., a member of a protected class under the MHRA) and who has suffered discrimination prohibited by section 213.055 of the MHRA; (3) causation, i.e., her association with Lampley was a contributing factor (or motivating factor) in the discrimination she suffered; and (4) damages. Frost's Amended Charge alleges ample facts to meet these requirements.

First, Frost alleges ultimate facts sufficient to show she suffered discrimination of the sort prohibited by the MHRA. Her Amended Charge states: "Approximately 2 weeks prior to my … probationary review by Kissinger, Kissinger began to verbally harass me during a one-on-one meeting in his office by threatening to give me a poor performance review …." Amended Charge at ¶ 7. "Kissinger's verbal abuse, relocating my desk, ostracizing and isolating me from my co-workers, threatening my performance review, prohibiting me from having lunch with Lampley, among other harassing behavior are humiliating, intimidating, and bullying." *Id*. at ¶ 12. Accordingly, Frost's Amended Charge plainly pleads sufficient ultimate facts regarding Employer's discrimination against her with respect to her compensation, terms, conditions, or privileges of employment.

Second, Frost alleges ultimate facts sufficient to show association. Her Amended Charge states: "I am a friend and co-worker of ***Harold Lampley, a male*** who is gay and who does not exhibit the stereotypical attributes of how a male should appear and behave." *Id*. at ¶ 2 (emphasis added). The emphasized portion of this allegation, by itself, is sufficient to meet the association element of Frost's claim.

10

Third, Frost alleges ultimate facts sufficient to show causation. Her Amended Charge states, "Kissinger knew that I was good friends with … Lampley …." *Id*. at ¶ 6. Frost further states, "The Department of Social Services, Kissinger, Woods and [Beverly] Struemph[, the HR Manager,] treat me differently than my co-workers and created a hostile work environment for me because of my association with Lampley …." *Id*. at ¶ 20. As with Lampley's allegations of "but for" causation, this allegation is sufficient to establish the causation element of Frost's MHRA claim, regardless of whether the "substantial factor" test or the "motivating factor" test applies.

Fourth, Frost alleges ultimate facts sufficient to show damages. Her Amended Charge states: "As a result of the conduct of Kissinger, Woods and Struemph and other management in the Department of Social Services, I have suffered damages, including but not limited to emotional distress, physical illness related to stress that requires constant medication to treat anxiety and depression, repeated visits to my doctor, and loss of enjoyment of life." *Id*. at ¶ 22. These are sufficient allegations to meet the damages element.

Accordingly, Frost's Amended Charge also alleges sufficient ultimate facts to state an association claim for sex discrimination under the MHRA. § 213.070. As a result, the Commission's executive director erred in determining the Commission had no jurisdiction over Frost's claim, and the circuit court erred in failing to grant Frost relief.

As noted in *R.M.A.*, "[t]his same simple and straightforward analysis has also been utilized in federal court." *R.M.A.*, __ S.W.3d. __, Slip Op. at 9. In *Wrightson v. Pizza*

11

*Hut of Am., Inc.*, 99 F.3d 138 (4th Cir. 1996), the Fourth Circuit reversed the dismissal of a plaintiff's complaint for failure to state a claim. In doing so, the court explained,

> [W]hile it is true Title VII does not afford a cause of action for discrimination based upon sexual orientation, Wrightson does not allege that he was discriminated against because he is heterosexual. He specifically alleges in his complaint that he was discriminated against "because of his sex, male." ***The unequivocal allegation that he was discriminated against "because of his sex," which, for purposes of Rule 12(b)(6) must be accepted as true, is alone sufficient to withstand Pizza Hut's motion to dismiss ….*** Of course, even had Wrightson alleged that he was discriminated against both because he was heterosexual and because he was male, he would still state a claim under Rule 12(b)(6). [A] cause of action lies even though the discrimination against the employee is not "solely" because of the employee's sex, as long as the employee's sex was a cause of the discrimination.

*Id.* at 143-44 (internal citations omitted) (emphasis added). The same is true here. Lampley and Frost have each (at the very least) claimed they suffered discrimination because of Lampley's sex. And, for purposes of determining whether the charges filed with the Commission were sufficient to state a claim under the MHRA and thereby invoke the Commission's jurisdiction, these allegations must be taken as true. *Cf. Bromwell*, 361 S.W.3d at 398.

## CONCLUSION

For the reasons set forth above, I join the principal opinion in its conclusion that the judgment of the circuit court must be reversed and the case remanded for further proceedings.

_____
Paul C. Wilson, Judge

12



# SUPREME COURT OF MISSOURI
## en banc

HAROLD LAMPLEY and )
RENE FROST, )
)
       Appellants, )
)
v. )    No. SC96828
)
THE MISSOURI COMMISSION ON )
HUMAN RIGHTS and )
ALISA WARREN, )
)
       Respondents. )

## OPINION CONCURRING IN PART AND DISSENTING IN PART

I concur with the opinions of Judges Draper, Wilson, and Powell to the extent they hold the administrative action is properly reviewed as a noncontested case,[1] and that discrimination based on sexual orientation is not covered by the Missouri Human Rights Act. *Lampley v. Mo. Comm'n on Human Rights*, Slip Op. at 13; *see also R.M.A., by his next friend: Rachelle Appleberry v. Blue Springs*

---

[1] The principal and concurring opinions correctly acknowledge our review of this matter is governed by §536.150, RSMo 2000, and Lampley and Frost concede in their supplemental briefing contested case review of the executive director's actions is unavailable.

*R-IV Sch. Dist.*, _ S.W.3d _ , _ (Mo. banc 2019).[2]  I also agree  Lampley and Frost failed to comply with Rule 94 because they sought a summons rather than a preliminary order.  *U.S. Dep't of Veterans Affairs v. Boresi*, 396 S.W.3d 356, 359 n.1 (Mo. banc 2013); *Bartlett v. Mo. Dep't. Ins.*, 528 S.W.3d 911, 914 (Mo. banc 2017).

Unlike a majority of this Court, my view is that clarity and predictability demand this Court follow its rules as written.  *State ex rel. Tivol Plaza, Inc. v. Mo. Comm'n on Human Rights* 527 S.W.3d 837, 847-48 (Mo. banc 2017) (Fischer, J., dissenting).  The failure to follow Rule 94 is where the resolution of this case should begin and end.  *Boresi*, 396 S.W.3d at 365 (Fischer, J., concurring); *Bartlett*, 528 S.W.3d at 914.[3]  Rather than following Rule 94 as written, a majority of this Court is once again willing to excuse compliance with this Court's rules.  Like the boy who cried wolf, the principal opinion reduces this Court's holdings to unheeded exhortations by once again excusing Lampley and Frost's noncompliance with Rule 94.

 

_____

Zel M. Fischer, Chief Justice

---

[2] Whether the MHRA should be amended to prohibit and provide a remedy for discrimination based on sexual orientation is a policy decision for the General Assembly, not this Court.

[3] In *Boresi*, this Court explained the "practice of issuing a summons in lieu of a preliminary writ is not authorized by Rule 94" and warned "This Court is not required to exercise its discretion in like manner in the future."  *Boresi*, 396 S.W.3d at 359 (Mo. banc 2013).  In *Bartlett*, this Court stated "That future has now arrived" and dismissed the appeal because "denial of mandamus relief without the issuance of a preliminary writ is not subject to appeal."  *Bartlett*, 528 S.W.3d at 914.

2



# SUPREME COURT OF MISSOURI
## en banc

HAROLD LAMPLEY and )
RENE FROST, )
            )
        Appellants, )
            )
v. )    No. SC96828
            )
THE MISSOURI COMMISSION ON )
HUMAN RIGHTS and )
ALISA WARREN, )
            )
        Respondents. )
            )

## DISSENTING OPINION

I respectfully dissent. The principal opinion overlooks crucial issues that control the outcome of this case and preclude this Court from deciding whether the Missouri Human Rights Act covers discrimination based on sex stereotyping. Harold Lampley and Rene Frost, who were aggrieved by an administrative agency decision, sought both contested case review and noncontested case review in the circuit court. To the extent they sought contested case review, the circuit court's summary judgment against them must be affirmed because the circuit court was without authority to conduct contested case review for a noncontested case. To the extent Lampley and Frost sought noncontested case review

via a writ of mandamus in the circuit court, their appeal must be dismissed because the circuit court did not first issue a preliminary writ before denying mandamus relief. However, if this Court exercises its discretion to review the denial of mandamus relief in this appeal, the circuit court's decision should be affirmed because mandamus cannot be used to control the administrative agency's executive director's discretionary determination that Lampley's and Frost's complaints alleged discrimination based on sexual orientation rather than sex stereotyping. Moreover, even if such determination were subject to review by an "abuse of discretion" standard, the executive director did not abuse her discretion in closing Lampley's and Frost's complaints because the determination that the complaints alleged discrimination based on sexual orientation rather than sex stereotyping was not unreasonable, arbitrary, or clearly against the logic of the circumstances considering the allegations contained in the complaints.

## I.

Lampley and Frost filed complaints with the Missouri Commission on Human Rights alleging discrimination by their supervisors. The Commission's executive director reviewed the complaints and determined the complaints alleged discrimination based on sexual orientation. Thereafter, the executive director closed the complaints prior to a hearing because the Missouri Human Rights Act (MHRA) does not cover discrimination based on sexual orientation. When Lampley and Frost sought review of the executive director's decision, they each filed a petition in the circuit court denominated "Petition for Administrative Review or in the Alternative for Mandamus." The petitions stated they

2

were seeking judicial review pursuant to § 536.140,[1] which applies to contested cases, or, alternatively, a writ of mandamus pursuant to § 536.150, which applies to noncontested cases. The circuit court ultimately granted summary judgment against Lampley and Frost. While the circuit court denied mandamus relief in its summary judgment ruling, it did so without first issuing a preliminary writ. Instead, the circuit court issued only summonses, and the case proceeded not as a mandamus action under Rule 94 and § 536.150 but as if the case were subject to contested case judicial review pursuant to § 536.140. Lampley and Frost appealed from the circuit court's ruling rather than seeking mandamus relief from the next higher court. Lampley and Frost's two points on appeal argue: (1) the executive director abused her discretion in determining their complaints alleged discrimination based on sexual orientation rather than sex stereotyping (Point II); and (2) the MHRA covers discrimination based on sex stereotyping (Point I). Their second point, therefore, is necessarily contingent on their first. Notably, Lampley and Frost do not address whether the MHRA covers discrimination based on sexual orientation, which the executive director determined their complaints alleged.

## II.

Judicial review of the executive director's actions on behalf of the Missouri Commission on Human Rights is governed by statute. Section 213.085.2 of the MHRA allows any person "aggrieved by a final decision … of the commission" to obtain judicial review by "filing a petition in the circuit court of the county of proper venue." The section

---

[1] All statutory references are to RSMo 2000 unless otherwise indicated.

goes on: "Judicial review shall be in the manner provided by chapter 536." Chapter 536, the Missouri Administrative Procedure Act (MAPA), provides for judicial review of administrative decisions for two different types of cases, contested and noncontested. *Furlong Cos., Inc. v. City of Kan. City*, 189 S.W.3d 157, 165 (Mo. banc 2006). "A 'contested case' is defined in the MAPA as 'a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing.'" *Id.* "Contested case review is controlled by sections 536.100 to 536.140." *Id.* "The MAPA does not explicitly define a 'non-contested case,' but it has been defined by this Court as a decision that is not required by law to be determined after a hearing." *Id.* Noncontested case review is controlled by § 536.150. *Id.* The distinction between a contested and noncontested case is not immaterial. The scope of judicial review is different depending on the type of case, and a circuit court is without authority to conduct contested case review for a noncontested case or vice versa. *See Nowden v. Div. of Alcohol & Tobacco Control*, 552 S.W.3d 114, 117 (Mo. banc 2018); *McCoy v. Caldwell Cty.*, 145 S.W.3d 427, 428–29 (Mo. banc 2004).

With this distinction in mind, it is important to note the Missouri Commission on Human Rights did not render a decision following a hearing in this case. Rather, the **executive director** of the Commission administratively closed the complaints, prior to a hearing, for lack of authority[2] pursuant to 8 CSR 60-2.025(7)(B). This Court has held the

---

[2] The executive director's decision referred to the Commission's lack of "jurisdiction," which is consistent with the language used in the relevant statutes and regulations pertaining to the Commission. However, the Commission's "jurisdiction" is nothing more than statutory authority and should not be equated to the subject matter jurisdiction

4

closure of a complaint by the executive director of the Commission before a hearing is held "squarely fits within the provisions of section 536.150 as a decision in a **noncontested case**." *State ex rel. Martin-Erb v. Mo. Comm'n on Human Rights*, 77 S.W.3d 600, 606 (Mo. banc 2002) (emphasis added); *see also* 8 CSR 60-2.025(7)(E) (providing judicial review of the executive director's decision "shall be in the manner provided by Chapter 536, RSMo for **noncontested** cases") (emphasis added). Lampley and Frost were each aggrieved by a decision in a noncontested case, rather than a contested case.[3]

Seeking review of the executive director's decision, Lampley and Frost each filed a petition in the circuit court denominated "Petition for Administrative Review or in the Alternative for Mandamus." The petitions stated they were seeking judicial review pursuant to § 536.140, which applies to contested cases, or, alternatively, a writ of mandamus pursuant to § 536.150, which applies to noncontested cases.[4] Because Lampley and Frost were each aggrieved by a decision in a noncontested case, the circuit court lacked authority to conduct contested case review pursuant to § 536.140. *See Nowden*, 552

---

constitutionally vested in the courts of this state. *See Cass Cty. v. Dir. of Revenue*, 550 S.W.3d 70, 74 (Mo. banc 2018); *see also J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 255 (Mo. banc 2009) ("When a statute speaks in jurisdictional terms or can be read in such terms, it is proper to read it as merely setting statutory limits on remedies or elements of claims for relief that courts may grant.").

[3] The principal opinion and the other two separate opinions correctly acknowledge our review of this matter is governed by §536.150, and Lampley and Frost concede, in their supplemental briefing, contested case review of the executive director's actions is unavailable.

[4] Lampley and Frost sought review pursuant to § 536.140 despite the clear direction from this Court in *Martin-Erb* and the executive director's "Notice of Termination of Proceedings," which alerted Lampley and Frost to the fact that they could seek judicial review by "filing a petition under § 536.150."

5

S.W.3d at 118; *McCoy*, 145 S.W.3d at 428–29. Consequently, to the extent the petitions sought contested case review, summary judgment against Lampley and Frost was undoubtedly proper and should be affirmed.[5] *See Nowden*, 552 S.W.3d at 118; *McCoy*, 145 S.W.3d at 428-29.

But to the extent the petitions sought noncontested case review by means of a writ of mandamus, a separate procedural issue arises. While the circuit court denied mandamus relief in its grant of summary judgment against Lampley and Frost, it did so without first issuing a preliminary writ. Instead, the circuit court issued only summonses to initiate review. This is procedurally deficient as this Court set out in *U.S. Department of Veterans Affairs v. Boresi*, 396 S.W.3d 356 (Mo. banc 2013).

In *Boresi*, this Court explained the "practice of issuing a summons in lieu of a preliminary writ is not authorized by Rule 94. Writs are extraordinary remedies, and their procedures differ from normal civil actions. The practice of issuing a summons rather than a preliminary order fails to acknowledge the nature of the remedy." *Id.* at 359 n.1. Although this Court exercised its discretion in *Boresi* to nevertheless treat a summons as a preliminary writ, it warned: "This Court is not required to exercise its discretion in like manner in the future." *Id.*

---

[5] "This Court's review of a grant of summary judgment is essentially de novo; therefore, the trial court's order may be affirmed in this Court on an entirely different basis than that posited at trial, and this Court will affirm the grant of summary judgment under any appropriate theory." *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 664 (Mo. banc 2010).

Four years later, this Court declared: "That future has now arrived." *Bartlett v. Mo. Dep't of Ins.*, 528 S.W.3d 911, 914 (Mo. banc 2017). In *Bartlett*, two former employees filed a petition for a writ of mandamus against their former employer, the Missouri Department of Insurance. *Id.* at 912. The circuit court did not issue a preliminary writ but instead issued summonses and eventually denied mandamus relief by granting summary judgment in favor of the department. *Id.* at 912–13. When the employees attempted to appeal the circuit court's denial of mandamus relief, this Court dismissed the appeal because "denial of mandamus relief without the issuance of a preliminary writ is not subject to appeal." *Id.* at 914. In doing so, this Court once again explained there is a difference between issuing a summons and issuing a preliminary writ, and that issuing a summons is not authorized by Rule 94, which governs mandamus. *Id.* This Court gave another warning, as well: "Parties seeking mandamus relief who choose to disregard the procedures and requirements of Rule 94 do so at their own risk." *Id.*

In their supplemental briefing, Lampley and Frost argue their appeal should not be dismissed, but instead argue this Court should review the closure of their complaints on the merits pursuant to *State ex rel. Tivol Plaza, Inc. v. Missouri Commission on Human Rights*, 527 S.W.3d 837, 842 (Mo. banc 2017). In *Tivol*, handed down the same day as *Bartlett*, this Court exercised its discretion to treat summonses as preliminary writs, in contrast with *Bartlett*. While this Court exercised its discretion to treat summonses as preliminary writs, the Court once again warned future litigants they "should not expect unending tolerance" for failing to follow Rule 94. *Id.* This Court excused such failure in *Tivol*, citing "the lack of fault on the part of the parties in proceeding by summons and in

7

light of the importance of the issues presented in these cases." *Id.* *Tivol* stands for the proposition that this Court may exercise its discretion to entertain an appeal of the denial of mandamus despite the issuance of a summons rather than a preliminary writ of mandamus, but just because this Court may exercise its discretion does not mean it is required to do so, even if the parties lack fault by proceeding by summons and the issue seeking review is an issue of importance.

The failure to follow the procedures set forth in Rule 94 prejudices both the parties and the courts. Extraordinary writ procedures exist because writ actions differ from ordinary civil cases. As the concurring opinion noted in *Boresi*, "the issuance of a summons does not serve all the purposes of a preliminary order and is not authorized by Rule 94 (mandamus) or 97 (prohibition)." *Boresi,* 396 S.W.3d at 365 (Fischer, CJ., concurring). For the respondent, the "purpose of requiring a preliminary order at the outset of a writ proceeding is to require some judicial evaluation of the claim to determine if the respondent should even be required to answer the allegations." *Id.* For the relator, "a preliminary order in mandamus or prohibition does more than a summons, which satisfies notice to a person that an action has been filed so that the person may appear and defend against the action, because the preliminary order often prohibits further action until further order of the court." *Id.* On appeal, the failure to follow the proper writ procedures "leads to confusion as to the proper standard of review." *Id.*

In the instant case, Lampley and Frost had notice of the dire warning in *Boresi* but nevertheless ignored the requirements of Rule 94 and failed to request the circuit court issue a preliminary writ. More importantly, they also failed to satisfy even the most basic

8

requirements of Rule 94, such as specifically explaining why they were entitled to an extraordinary writ or filing suggestions in support of a writ petition. *See* Rule 94.03. Indeed, it is generous to even credit Lampley's and Frost's petitions with substantively seeking mandamus relief. While the petitions were certainly denominated as ones seeking mandamus in the alternative and the prayers for relief requested mandamus in the alternative, the analysis in the petitions expressly cited to, and was tailored toward, the criteria for contested case review, not mandamus. The petitions contained no separate mandamus-specific analysis. *See Weber v. Weber*, 908 S.W.2d 356, 359 (Mo. banc 1995); *McClellan v. Highland Sales & Inv. Co.*, 426 S.W.2d 74, 77 (Mo. 1967) (finding "the character of a cause of action is determined from the facts stated in the petition and not by the prayer or name given the action"). Furthermore, after filing their petitions, Lampley and Frost ceased to rely on § 536.150 and mandamus altogether. Instead, in their further pleadings—whether in opposition to the respondents' motion to dismiss, in opposition to the respondents' motion for summary judgment, in support of their own motion for summary judgment, or in their proposed findings of fact and conclusions of law—Lampley and Frost relied exclusively on § 536.140, which is irrelevant to mandamus.[6]

In their supplemental briefing, Lampley and Frost offer no excuse for their lack of compliance with the writ procedure rules but merely ask this Court to exercise its discretion to review this matter on the merits as this Court did in *Tivol*. Were this Court never to

---

[6] Because Lampley's and Frost's petitions could more aptly be characterized as seeking review pursuant to § 536.140, summary judgment could be affirmed because the circuit court lacked authority for the reasons set forth above to conduct contested case review pursuant to § 536.140. *See Nowden*, 552 S.W.3d at 118; *McCoy*, 145 S.W.3d at 428–29.

9

enforce its procedural rules, no litigant or judge would ever follow them. *See R.M.A v. Blue Springs R-IV Sch. Dist.*, 477 S.W.3d 185, 188-189 (Mo. App. 2015) (refusing to exercise discretion and dismissing an appeal of a denial of a permanent writ of mandamus decided on the merits after a trial court issued a summons rather than a preliminary writ in a MHRA case because "trial courts and parties are not free to disregard the plain language of Rule 94"). More importantly, this case can be distinguished from *Tivol* because this case does not present an issue of general importance. The initial question this Court must determine, before reaching the issue of whether the MHRA covers sex stereotyping, as the principal opinion and Judge Wilson's concurring opinion rush to decide, is whether the executive director abused her discretion in finding Lampley's and Frost's complaints alleged discrimination based on sexual orientation rather than discrimination based on sex stereotyping. As more fully explained below, because the executive director did not abuse her discretion, this Court cannot reach the issue of general importance whether the MHRA protects against sex stereotyping as the principal opinion contends. Therefore, this Court should not exercise its discretion, and Lampley's and Frost's appeal of the circuit court's denial of mandamus relief without issuance of a preliminary writ should be dismissed in accordance with *Boresi, Tivol*, and *Bartlett*.

## III.

Even if this Court were to exercise its discretion and entertain the appeal in accordance with *Tivol*, the circuit court should nonetheless be affirmed. "An appellate

10

court reviews the denial of a petition for a writ of mandamus for an abuse of discretion."[7] *Boresi*, 396 S.W.3d at 359. Of course, to determine whether a circuit court abused its discretion in denying mandamus relief, it must be understood what would warrant relief in the circuit court.

Petitioners seeking noncontested case review pursuant to § 536.150 have several options, as they may file a "suit for injunction, certiorari, mandamus, prohibition or other appropriate action." Section 536.150.1 further provides a court may review whether an administrative decision in a noncontested case is "unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion." In their petitions, Lampley and Frost specifically chose to seek review by mandamus, but they did not specify review by one or more of the standards provided by § 536.150.1.

"Mandamus will lie only when there is a clear, unequivocal, specific right to be enforced." *State ex rel. Mo. Growth Ass'n v. State Tax Comm'n*, 998 S.W.2d 786, 788 (Mo. banc 1999). "The purpose of the writ is to execute, not adjudicate." *Id.* "Mandamus is only appropriate to require the performance of a ministerial act." *Id.* "The purpose of the extraordinary writ of mandamus is to compel the performance of a ministerial duty that

---

[7] The fact the circuit court denied mandamus relief by granting summary judgment against Lampley and Frost does not convert the standard of review to the de novo review typically used for summary judgment as the principal opinion and Judge Wilson's opinion contend. This is because the standard of review when a writ is denied is derived from the discretionary nature of writs in general, not the means by which a particular denial occurs. "Because the disposition of the underlying writ request is discretionary, the matter is reviewed on appeal only to determine whether the circuit court abused its discretion in quashing the writ." *State ex rel. Taylor v. Meiners*, 309 S.W.3d 392, 394 (Mo. App. 2010) (internal quotations omitted).

11

one charged with the duty has refused to perform." *Furlong*, 189 S.W.3d at 165; *see also*

*State ex rel. Robison v. Lindley-Myers*, 551 S.W.3d 468, 473 (Mo. banc 2018). Mandamus

will not issue except "in cases where the ministerial duties sought to be coerced are simple

and definite, arising under conditions admitted or proved and imposed by law." *Martin-*

*Erb*, 77 S.W.3d at 608 n.7; *see also Robison*, 551 S.W.3d at 474; *Furlong*, 189 S.W.3d at

166. "Conversely, mandamus cannot be used to control the judgment or discretion of a

public official" *Mo. Growth Ass'n*, 998 S.W.2d at 788 (internal quotations omitted).

Accordingly, mandamus cannot be used to control discretionary decisions.[8] *Martin-Erb*,

77 S.W.3d at 607-08.

The executive director must close a complaint if she determines the Commission

lacks authority. *See* 8 CSR 60-2.025(7)(B); *see also* § 213.075.1; *Farrow v. Saint Francis*

*Med. Ctr.*, 407 S.W.3d 579, 589 (Mo. banc 2013). As part of this determination, the

executive director necessarily must exercise discretion to decide what a complaint actually

---

[8] Nothing in § 536.150 purports to change the substantive nature of mandamus; it merely provides mandamus is one of several options to obtain noncontested case review. Indeed, this Court has previously indicated the general standard for mandamus applies even when mandamus relief is sought specifically pursuant to § 536.150. *See, e.g., Robison*, 551 S.W.3d at 473; *Tivol*, 527 S.W.3d at 841; *Furlong*, 189 S.W.3d at 165 - 66; *Martin-Erb*, 77 S.W.3d at 607, 608 n.7. Because mandamus is used to enforce duties required by law rather than to control discretionary decisions, when a petitioner-given the several options provided by § 536.150.1-chooses to seek noncontested case review by filing a petition for a writ of mandamus, the judicial review contemplated by § 536.150.1 is essentially limited to determining whether the administrative decision was "unlawful," i.e., whether the administrative officer or body refused to perform a duty required by law. *See Martin-Erb*, 77 S.W.3d at 607-08. Notably, § 536.150.1 provides a court **may** consider six different review standards ("unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion"), but it does not require that a court **must** consider every standard in every circumstance.

alleges.  *See* § 213.075.1.  Here, the executive director determined the complaints alleged discrimination based on sexual orientation and concluded, as a matter of law, the MHRA does not cover discrimination based on sexual orientation.[9]

Notably, Lampley and Frost do not contest whether the MHRA covers discrimination based on sexual orientation.[10]  Instead, on appeal, they argue they pleaded discrimination based on sex stereotyping rather than sexual orientation.[11]  The challenged act in this case, therefore, is not the executive director's decision to close the complaints

---

[9]  The executive director's "Investigation Summary" for Lampley's complaint stated in relevant part:

> Complainant alleged that Respondent discriminated against him because of his sex and in retaliation.  By sex Complainant means sexual orientation.  As sexual orientation is not protected from discrimination by the Missouri Human Rights Act, complaining about harassment because of sexual orientation is also not protected by the Missouri Human Rights Act.

The executive director's "Investigation Summary" for Frost's complaint stated in relevant part:

> Complainant alleged that Respondent discriminated against her because of her association with someone who is gay and in retaliation for complaining about it.  As sexual orientation is not protected from discrimination by the Missouri Human Rights Act, discrimination and retaliation because of associating with someone who is gay is also not protected by the Missouri Human Rights Act.

[10]  Lampley and Frost's appellants' brief expressly concedes they "are not addressing whether the MHRA covers sexual orientation discrimination."  In their reply brief, however, they argue for the first time the MHRA does cover discrimination based on sexual orientation.  Issues raised for the first time in a reply brief are not properly before this Court and will not be considered.  *Newsome v. Kan. City, Mo. Sch. Dist.*, 520 S.W.3d 769, 777 n.7 (Mo. banc 2017); *Berry v. State*, 908 S.W.2d 682, 684 (Mo. banc 1995).

[11]  As noted, Lampley and Frost's other point on appeal argues the MHRA covers sex stereotyping, an argument that need not be reached if their pleading argument fails.

13

because the MHRA does not cover discrimination based on sexual orientation but rather the executive director's discretionary determination that the complaints pleaded discrimination based on sexual orientation rather than sex stereotyping.

Consistent with the general standard for mandamus, this Court has previously held that, in the context of noncontested case review pursuant to § 536.150, a discretionary determination by the executive director of the Commission is not subject to review by mandamus. *See Martin-Erb*, 77 S.W.3d at 607. In *Martin-Erb*, the executive director closed a complaint after determining there was "no probable cause" to believe discrimination occurred. *Id.* at 602. The complainant sought review of this decision by filing a petition for a writ of mandamus in the circuit court. *Id.* The circuit court issued a preliminary writ but then ultimately quashed it, reasoning the decision was not reviewable by mandamus. *Id.* at 602–03. On appeal, this Court explained "**a court cannot compel the executive director to exercise her discretion so as to reach a particular result**, [but] it can compel her to follow the procedures set out in agency regulations for making the 'probable cause' determination." *Id.* 607 (emphasis added). In other words, mandamus could be used to enforce mandatory procedures but not to control a discretionary determination. *Id.* "In so holding, this Court emphasizes that the circuit court should not substitute its discretion for that of the executive director in determining whether 'probable cause' exists" *Id.* at 608; *see also* § 536.150.1 (in reviewing a decision in a noncontested case, "the court shall not substitute its discretion for discretion legally vested in such administrative officer or body").

14

Lampley and Frost do not suggest the executive director failed to follow mandatory procedures in reaching her determination that the complaints pleaded discrimination based on sexual orientation. Instead, they challenge her discretionary determination that Lampley's and Frost's complaints alleged discrimination based on sexual orientation rather than sex stereotyping. In fact, Lampley and Frost specifically allege in their substitute brief that the "Commission abused its discretion" by finding their complaints alleged discrimination based on sexual orientation rather than sex stereotyping. In accordance with *Martin-Erb,* the executive director's discretionary determination is not subject to review by mandamus, as "a court cannot compel the executive director to exercise her discretion so as to reach a particular result," and this Court cannot substitute its discretion for that of the executive director in determining that the complaints pleaded discrimination based on sexual orientation rather than sex stereotyping. *Id.* at 607-08. The circuit court's denial of mandamus, if appealable, may be affirmed on this basis alone.

Nevertheless, if, contrary to *Martin-Erb*, the general standard for mandamus were ignored and the executive director's discretionary determination were subject to review by one or more of the standards provided by § 536.150.1, the circuit court should still be affirmed. While § 536.150.1 provides a court may review whether a decision is "unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion," Lampley and Frost's substitute brief argues only the "abuse of discretion" standard regarding the executive director's determination of what their complaints

15

alleged.[12]  Because the executive director did not abuse her discretion in determining the complaints alleged discrimination based on sexual orientation, summary judgment should be affirmed.

Section 213.075.1 requires a complaint to "set forth the **particulars**" of the alleged discrimination. (Emphasis added.)  Here, the complaints particularized, and focused on, the fact Lampley is a gay man.  Lampley's complaint begins by stating "I am a male and gay" and Frost's complaint begins by stating she is friends with Lampley, "a male who is gay."  The complaints then allege two supervisors created a hostile work environment that has affected the terms and conditions of employment.  The complaints stated Lampley's two supervisors "have knowledge that I am gay," noting the point in time when each supervisor learned Lampley is gay, and the discrimination is alleged to have occurred after they learned Lampley is gay.  Lampley's complaint also compared his treatment to

---

[12] The principal opinion and Judge Wilson's concurring opinion wrongly review the circuit court's decision de novo.  Because Lampley and Frost allege in their opening brief that the executive director abused her discretion, any review of the executive director's actions in this matter should be limited to that standard.  As explained above, the petitions filed by Lampley and Frost in circuit court did not seek nor specify review by one or more of the standards provided by § 536.150.1.  Nonetheless, Lampley and Frost allege in their supplemental briefing that "the circuit court should have decided whether the director's decision was 'unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involve[d] an abuse of discretion'" pursuant to § 536.150.1.  The principal opinion and Judge Wilson's concurring opinion likewise forgive Lampley's and Frost's lack of specificity in their original pleadings and hold open all standards of review under § 536.150.1, arguing the language of § 536.150.1 does not limit Lampley and Frost to the abuse of discretion standard they alleged in their opening brief.  But this ignores the discretionary nature of mandamus in general.  *See* n.7, *supra* (citing *Meiners*, 309 S.W.3d at 394).  Despite contrary arguments, it is difficult for this Court to fault the circuit court for not reviewing the executive director's decision under one or more of the standards provided by § 536.150.1 when Lampley and Frost did not ask the court to do so in their petitions and specifically sought mandamus relief.

16

"similarly situated co-workers [who] are not gay." All of these "particulars" of the complaints were irrelevant unless the complaints were alleging discrimination based on Lampley's sexual orientation.[13]

Although the complaints also made references to "stereotypical attributes," no **particular** attributes or behaviors that could be the subject of sex stereotyping were ever mentioned. There was no allegation that Lampley had any particular demeanor or appearance associated with a sex stereotype. Rather, the references to "stereotypical attributes" were always prefaced by the fact that Lampley is gay, suggesting this is how the two supervisors knew or suspected that he was gay.[14] In fact, being gay is the only

---

[13] Clearly, these complaints were relevant to Lampley and Frost. The language of this opinion should not be taken to minimize or justify the actions alleged to have been committed by Lampley's and Frost's two supervisors.

[14] The portion of Lampley's complaint referencing "stereotypical attributes" alleges as follows:

> [Lampley's supervisors] have knowledge that I am gay and that I do not exhibit the stereotypical attributes of how a male should appear and behave. [Supervisor 1] first learned that I was gay in June 2013 after I complained to him about a co-worker sexually harassing and soliciting me. On or about June 2013 [Supervisor 2] learned that I was gay after [Supervisor 1] shared my reported complaint about this same sexual harassment and solicitation. Similarly situated co-workers in the [workplace] are treated differently than me. These similarly situated co-workers are not gay, and they exhibit the stereotypical attributes of how a male or female should appear and behave.

The portion of Frost's complaint referencing "stereotypical attributes" alleges as follows:

> [Frost's supervisors] have knowledge that Lampley is gay and that Lampley does not exhibit the stereotypical attributes of how a male should appear and behave. [Supervisor 1] first learned that Lampley was gay in June 2013 and [Supervisor 2] learned that Lampley was gay in 2013 after [Supervisor 1] shared Lampley's complaint about sexual harassment and solicitation with [Supervisor 2] …. [Employer, Supervisor 1, Supervisor 2, and HR Manager]

17

particular "attribute" ever discussed in the complaints. Considering these "particulars" set forth in the complaints, *see* § 213.075.1, the executive director's determination that the complaints alleged discrimination based on sexual orientation rather than sexual stereotyping was not "clearly against the logic of the circumstances" or "so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration," *In re Care and Treatment of Donald*, 214 S.W.3d 331, 334 (Mo. banc 2007). "If reasonable persons can differ as to the propriety of the [decision maker's] action, then it cannot be said that the [decision maker] abused its discretion."[15] *Id.*

---

> treat me differently than my co-workers and created a hostile work environment for me because of my association with Lampley, a male who is gay and who does not exhibit the stereotypical attributes of how a male should appear and behave.

[15] The principal opinion claims this opinion wrongly characterizes Lampley's and Frost's complaints as alleging discrimination based on sexual orientation rather than sex stereotyping. This opinion, however, does not characterize the complaints in any manner but merely contends the executive director did not abuse her discretion by finding the complaints allege discrimination based on sexual orientation rather than sex stereotyping based on the allegations made in the complaints. If this Court were asked to interpret Lampley's and Frost's complaints de novo, this opinion may very well find differently than the executive director. But that is not what this Court has been asked to do. Rather, Lampley and Frost argue in their opening brief that "The Commission **abused its discretion** by interpreting the Charges in a way to avoid coverage and failing to consider the plain language of the Charges." (Emphasis added). Lampley and Frost chose to pursue mandamus relief under § 536.150. They also chose to seek review under the "abuse of discretion" standard rather than under one or more of the other standards provided in § 536.150.1. Therefore, this opinion does not interpret or characterize the complaints, but reviews the actions of the commission and executive director only for an abuse of discretion pursuant to § 536.150, as requested by Lampley and Frost, all the while adhering to the dictates and limitations of mandamus and "abuse of discretion" review provided by § 536.150.

18

As the executive director did not abuse her discretion in determining the complaints alleged discrimination based on sexual orientation, the circuit court certainly did not abuse its discretion in denying a petition for mandamus that attempted to challenge this discretionary determination. Accordingly, if the denial of mandamus is treated as appealable and not dismissed, the circuit court should be affirmed.[16]

_____
W. Brent Powell, Judge

---

[16] As noted, the question of whether the MHRA covers discrimination based on sexual orientation is not before this Court. And because the executive director did not abuse her discretion in determining the complaints pleaded discrimination based on sexual orientation rather than sex stereotyping, this Court should not reach the hypothetical question of whether the MHRA covers discrimination based on sex stereotyping. These issues must be left for another day when the issues are properly brought before this Court.